SONDRA W. WEBB

v.

EASTERN AIRLINES, et al.

No. 0788-85

Argued October 9, 1985

Decided February 4, 1986

COUNSEL

R. Craig Jennings (Slenker, Brandt, Jennings & Johnston, on brief), for appellant.

Thomas M. Wochok, for appellee.

OPINION

MOON, J.—This appeal by Sondra W. Webb, an airline flight attendant, raises two issues: (1) whether the Industrial Commission erred in concluding that she was able to return to full unrestricted duty as of June 12, 1984; and (2) whether the Commission should have found that she was prevented from returning to work by the employer's procedures. We affirm the decision because there is credible evidence that Webb was able to return to work and the evidence fails to show that company procedures kept her from returning to work after June 12, 1984.

Factual findings of the Industrial Commission are binding upon this court if they are supported by credible evidence. Code § 65.1-98; *Jackson* v. *Loveland Distributing Co.,* 1 Va. App. 57, 58, 334 S.E.2d 148, 148 (1985) (per curiam).

Webb sustained multiple injuries on June 26, 1982, and did not return to full-time duty until September 7, 1982. Thereafter, she was disabled for several periods before and after June 12, 1984. On June 26, 1984, she filed her claim for all of her periods of disability. Before the hearing, the employer paid for all of the periods of disability except the one she experienced after June 12, 1984, which is the subject of this appeal. Because Webb requested the hearing, she had the burden of proving the length of her disability. *See King's Market* v. *Porter,* 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984).

Webb was treated by a number of physicians, including Dr. Marvin C. Korengold, a neurologist, who saw her in February of 1983. He concluded that the injuries that she sustained were sufficient to cause the symptoms of which she complained. However, he felt that by the time he saw her, there should have been pro-

gressive improvement and an eventual alleviation of the symptoms. In a letter dated February 3, 1983, he stated that her slow recovery "suggests the presence of some nonorganic factors in operation."

Webb returned to work in June, 1983, and worked until February 3, 1984, at which time she came under the care of Dr. Ray Goddard, a chiropractor. On May 17, 1984, the employer referred Webb to an orthopedic surgeon, Henry L. Feffer, for an evaluation. On June 12, 1984, Dr. Feffer reported that his examination produced "no evidence of any residual physical impairment which could possibly be attributed to her accidents on the job and . . . [he found] no physical basis for her continuing occupational inactivity."

Webb places great reliance on the opinion of Dr. Goddard who said that since February 7, 1984, Webb's diagnosis consisted of:

Cervical myofascitis, cervicalgia, cervicobrachial syndrome, cervicocranial syndrome, dislocation of the cervical spine, dislocation to lumbar spine, lumbosacral sprain/strain, neuritis, lumbar sprain/strain, intervertebral disc displacement, paravertebral myofascitis, and short leg, acquired.

The Industrial Commission discounted Dr. Goddard's opinion in part because "his diagnosis of the claimant's condition is somewhat at variance with a diagnoses of the several physicians who saw her before Dr. Goddard's report on August 27, 1984."

We find nothing in the record that would indicate that, as a matter of law, the opinion of Dr. Feffer is not credible evidence upon which the Commission could have based its determination that Webb was able to return to work on June 12, 1984. This conclusion is also somewhat corroborated by the earlier report of Dr. Korengold.

Webb also argues that the Commission should not have stopped her compensation on June 12, 1984, because even though Dr. Feffer stated that she was able to return to work, Eastern Airlines had a policy which prohibited her from doing so. As evidence of that policy, she introduced a statement entitled Worker's Compensation Procedures from Eastern Airlines, which stated in part that upon returning to work: "A flight attendant must have a no-

tice of clearance from their doctor and the Eastern Medical Department." She argues that Dr. Goddard was her treating physician and that she did not have clearance from the Eastern Medical Department. However, other than the statement of Eastern's Worker's Compensation procedures included in Webb's brief, there is nothing in the record that indicates that she was not allowed to return to work because of the failure of any doctor to permit it or the failure of the Eastern Medical Department to give her clearance. There is no evidence that she sought to return to work or to comply with Eastern's policies. The evidence establishes that she failed to return to work because she felt that she was unable to work. If Webb is unable to work, as she asserts, the evidence before the Commission supports the conclusion that it is not due to her occupational injury.

█ Webb relies upon *Bauserman v. Commonwealth of Virginia*, I.C. Claim No. 112-88-11 (Sept. 10, 1984) which held that "[e]ven though the treating specialist finds work capacity, if the employer's own physician refuses to allow the claimant to return to work because of the injury, compensation must continue." *Bauserman* properly states the law. However, *Bauserman* is distinguishable from the present case because Bauserman did not have the burden of proving that she was not able to return to work, as does Webb in this case. Furthermore, the record in *Bauserman* clearly showed that the claimant presented herself to the employer's physician after her treating physician had determined that she was able to return to work, and the employer's physician determined that she was not able to return to the rigorous duties required of a state trooper.

Accordingly the decision of the Industrial Commission is affirmed.

*Affirmed.*

Duff, J., and Cole, J., concurred.