**Richmond**

NATIONAL LINEN SERVICE

v.

THOMAS MCGUINN

No. 1305-85

Decided November 17, 1987

COUNSEL

Benjamin J. Trichilo (Lewis, Tydings, Bryan & Trichilo, P.C., on brief), for appellant.

Metin A. Cay (Ashcraft & Gerel, on brief), for appellee.

## UPON A REHEARING EN BANC

OPINION

**BENTON, J.** — On rehearing en banc,[1] Thomas McGuinn seeks reinstatement of an award entered by the Industrial Commission but subsequently overturned by a panel of this court in *National Linen Service v. McGuinn*, 3 Va. App. 73, 348 S.E.2d 42 (1986).

---

[1] Judge Hodges did not participate in the en banc proceeding.

For the reasons which follow, we affirm the decision of the commission.

Thomas McGuinn injured his ankle in August, 1983, while employed by National Linen as a laundry truck driver. He underwent surgery for reconstruction of the lateral ankle ligaments. In August 1984 Dr. You concluded that McGuinn could not carry heavy weights or go up and down stairs, but he believed that McGuinn should be able to drive a truck. Although Dr. You felt that McGuinn was merely experiencing residual symptoms from his surgery, he reported that Dr. Zilberfarb believed McGuinn had symptoms from sensory neuroma of the sural nerve. Dr. Zilberfarb examined McGuinn at the request of the carrier and concluded that he could not perform his duties as a route sales representative and that he required further medical and rehabilitative attention before he could return to work. In November, Dr. You concluded that McGuinn had regained almost full strength of his muscles and had good stability of his ankle joint. Dr. You acknowledged his continuing disagreement with Dr. Zilberfarb, who believed that McGuinn had developed a neuroma and was not able to return to his regular duties.

On December 19, 1984, McGuinn returned to light duty work for National Linen after a branch manager asked him to try the job. He assisted another driver on his regular route; however, after two and one-half hours of work his ankles became so swollen that he could not continue stepping on and off the truck. The vibration of the truck also caused pain in his ankle. Later that day he advised the branch manager that he was incapable of performing the work.

Dr. You then recommended that he attempt to work no more than four hours a day and limit his standing and walking to two to three hours. National Linen advised McGuinn that they did not have available part-time positions within those limitations and ceased payment of benefits. National Linen paid McGuinn temporary total disability benefits for the period November 22, 1983, through December 17, 1984, but did not execute and submit a memorandum of agreement to the Industrial Commission.

On January 23, 1985, McGuinn filed an application for hearing with the commission alleging continued entitlement to temporary total benefits and National Linen's refusal to execute and file a

memorandum of agreement. National Linen defended against the claim on the ground that McGuinn had not made reasonable efforts to market his remaining capacity for work. McGuinn testified that he "thought he was still on Comp," but that he had inquired about employment opportunities at Denny's Restaurant, with a friend who was a painter, and with his father who operates several fast food restaurants. None had jobs within the limitations recommended by his doctor.

The deputy commissioner entered an award for total work incapacity compensation limited to the period November 22, 1983, through December 18, 1984, with credit given the employer for payments made prior to entry of the award. The full commission reversed the deputy commissioner's determination that McGuinn was not entitled to compensation subsequent to December 18, 1984; it found that, although McGuinn had made only a limited effort to market his remaining work capacity, his belief that "he was still under compensation is reasonable in view of the fact that the carrier has paid compensation for a period of thirteen months without executing a Memorandum of Agreement." The commission entered an award "for temporary total work incapacity commencing November 22, 1983, and continuing until further conditions require a modification." A panel of this Court, holding that the commission's decision was inconsistent with the Supreme Court's ruling in *Washington Metropolitan Transit Authority v. Harrison*, 228 Va. 598, 324 S.E.2d 654 (1985), reversed the award.

■ The Workers' Compensation Act encourages the voluntary settlement of claims arising from compensable injuries; however, it also expresses an equally strong policy that when agreements as to settlements are reached they must be memorialized in a memorandum of agreement filed with the commission. *See* Code § 65.1-45; I.C. Rule 15.[2]Code § 65.1-93 explicitly requires volun-

---

[2] Code § 65.1-45 provides:
Nothing herein contained shall be construed so as to prevent settlements made by and between the employee and employer, but rather to encourage them, so long as the amount of compensation and the time and manner of payment are approved by the Commission in accordance with § 65.1-93 of this Act. A copy of such settlement agreement shall be filed, by employers, with the Commission.
Rule 15 of the Rules of the Commission provides:
All written agreements pertaining to the payment or termination of compensation shall be filed with the Commission immediately upon their execution.

tary agreements regarding compensation to be filed with the commission. In pertinent part the statute provides as follows:

> If after injury or death, the employer and the injured employee or his dependents *reach an agreement* in regard to compensation or in compromise of a claim for compensation under this Act, *a memorandum of the agreement* in the form prescribed by the Industrial Commission *shall be filed* with the Commission for approval.

Id. (emphasis added). Failure to promptly file memorandum of agreements is violative of the statute and frustrates a primary purpose behind the Workers' Compensation Act - to expedite the entry of awards in cases where the parties agree as to the compensability of the employee's injury.

█ National Linen argues that Code § 65.1-72 gives it "an absolute right to make voluntary payment of compensation benefits, without executing a Memorandum of Agreement."[3] We disagree. That section does not authorize an employer to ignore the provisions of Code § 65.1-93. Rather, it merely provides that payments voluntarily made prior to the rendition of an award may be deducted from the total amount of compensation due pursuant to the award subsequently entered. It does not, even by inference, eviscerate the requirements of Code § 65.1-93.

Here, National Linen paid McGuinn compensation for total work incapacity for a period of thirteen months, thus acknowledging the compensability of McGuinn's injury, but failed to execute and file a memorandum of agreement with the commission. The commission concluded, and we agree, that "it is reasonable to infer that the parties had reached an agreement as to the payment of compensation since the payments were made for thirteen months and there was no issue raised as to the compensability of the . . . [injury]." The situation is clearly one in which National

---

[3] Code § 65.1-72 provides:
Any payments made by the employer to the injured employees during the period of his disability, or to his dependents, which by the terms of this Act were not due and payable when made, may, subject to the approval of the Industrial Commission, be deducted from the amount to be paid as compensation; provided, that in the case of disability such deductions shall be made by shortening the period during which compensation must be paid and not by reducing the amount of the weekly payment.

Linen was required to file a memorandum of the agreement with the commission for its approval and entry of award under Code § 65.1-93.

■ Although Code § 65.1-93 does not explicitly provide penalties for an employer's failure to comply with its provisions, an employer cannot be permitted to ignore the mandatory wording of the statute to the detriment of its employees. As the commission correctly noted, if National Linen had complied with the statute, McGuinn would have been covered by the commission's award. National Linen then would have been obligated to honor the award until it established by a preponderance of the evidence a change in condition under Code § 65.1-99 and had been authorized by the commission to terminate the payment of benefits to McGuinn. We believe that because National Linen paid compensation benefits to McGuinn for thirteen months and failed to file with the commission a memorandum of agreement, it should be held to the same burden. To hold otherwise would be to allow an employer or its carrier to unilaterally violate the clear requirements of § 65.1-93 and thereby frustrate the purpose behind that statute. The Workers' Compensation Act exists to protect employees, *Ellis v. Commonwealth*, 182 Va. 293, 303, 28 S.E.2d 730, 734 (1944), not to facilitate a deprivation of an employee's rights by an employer who has not complied with the statutory requirements.

To establish a change in condition and thus successfully carry its burden, National Linen would have had to introduce evidence that McGuinn was either able to return to his regular employment or that he had been offered or provided selective employment within his work capacity. See *J.A. Foust Coal Co. v. Messer*, 195 Va. 762, 765, 80 S.E.2d 533, 535 (1954). National Linen proffered no such evidence. To the contrary, the commission had before it evidence that McGuinn was unable to return to his regular employment and that National Linen failed to provide him part-time work within the restrictions suggested by his doctor. Therefore, National Linen did not succeed in carrying its burden and may not now avoid continued payments of benefits.

Contrary to National Linen's assertions, we do not believe it may invoke *Washington Metropolitan Area Transit Authority v. Harrison*, 228 Va. 598, 324 S.E.2d 654 (1985), to circumvent the mandate of Code § 65.1-93. First, *Harrison* is not dispositive of

the issue before this Court because there was no allegation in *Harrison* that the employer violated Code § 65.1-93 or any other provision of the workers' compensation statutes. Furthermore, the employer in *Harrison* offered the claimant selective employment commensurate with his remaining work capacity, and the claimant successfully performed the selective work until terminated for economic reasons, eliminating any possibility that the claimant could have reasonably believed that he was entitled to total disability compensation. Here, in contrast, it was shown that McGuinn could not successfully perform his regular work. Additionally, National Linen did not offer evidence showing that it had offered to McGuinn alternative work within his physical limitations. To the contrary, when McGuinn advised National Linen that he was restricted by his doctor to four hour work days, he was told that they could not accommodate him.

In this case, National Linen stipulated compensability and stipulated payment of total work incapacity compensation through the date that McGuinn unsuccessfully attempted to return to light duty work. Unlike Harrison, the deputy commissioner and the commission found in this case that McGuinn *was entitled* to total work incapacity compensation for the period covered by National Linen's payments. Thus, but for National Linen's failure to file a memorandum of agreement as required by Code § 65.1-93 McGuinn's procedural posture with respect to entitlement would have been unlike those of the claimants in *Harrison, Pocahontas Fuel Co. v. Agee*, 201 Va. 678, 112 S.E.2d 835 (1960), and *Pocahontas Fuel Co. v. Barbour*, 201 Va. 682, 112 S.E.2d 904 (1960). If the agreement had been filed, McGuinn's *entitlement* to compensation would have been established, as well as the compensability of his injury, thus obviating the need for him to show that he made reasonable efforts to market his remaining work capacity. *See Harrison*, 228 Va. at 601, 324 S.E.2d at 656.

Moreover, National Linen seeks to assert its right to a "*Harrison* defense" even though its failure to abide by Code § 65.1-93 misled McGuinn to his detriment into believing that he was entitled to total work incapacity payments during the period of his disability. Where, as here, an employee justifiably relied upon the employer's conduct over a thirteen month period and was thus misled into believing that he was entitled to total work incapacity payments during the period of his disability, the doctrine of

estoppel may appropriately be invoked to bar the employer from using *Harrison* to its advantage. *See Harris v. Criterion Ins. Co.*, 222 Va. 496, 502, 281 S.E.2d 878, 881 (1981).

This case is distinguishable from *Stuart Circle Hospital v. Alderson*, 223 Va. 205, 288 S.E.2d 445 (1982). There, the court held that an employer cannot be estopped from raising the *jurisdictional* defense of the statute of limitations, absent fraud or other compelling circumstances. In contrast, existence of the defense provided to the employer by *Harrison* does not deprive either the commission or the reviewing court of jurisdiction to review the claimant's application. Thus, the rationale of *Stuart Circle* may not be invoked here to prevent the doctrine of estoppel from attaching to National Linen's conduct. Furthermore, and highly supportive of the commission's decision here, is the fact that subsequent to the *Stuart Circle* decision, Code § 65.1-87.1 was enacted to provide for the tolling of the statute of limitations where the "conduct of the employer has operated to prejudice the rights" of an employee.

Even if we were to hold that McGuinn was bound by *Harrison* to show that he made reasonable efforts to market his remaining capacity for work, he succeeded in carrying that burden. Although the commission on review agreed with the deputy commissioner that McGuinn made only a very limited effort to market his remaining work capacity, it held that McGuinn was justified in so doing because of his reasonable belief that "he was still under compensation." The record shows that McGuinn attempted a return to work within the limits prescribed by his physician and was unable to perform the work. This case thus falls squarely within the rationale of *Island Creek Coal Co. v. Fletcher*, 201 Va. 645, 112 S.E.2d 883 (1960), where the court stated:

> [T]hough the evidence bearing upon [claimant's] efforts to secure other employment that he could perform is not what might be desired, yet it shows that he was willing to accept other employment and did make an effort to work . . . but was unable to perform that work.

*Id.* at 648, 112 S.E.2d at 835.

In conclusion, the commission correctly determined that National Linen's failure to execute and file a memorandum of the

agreement as required by Code § 65.1-93, its payment of compensation to McGuinn for thirteen months, its failure to offer selective employment to McGuinn, and its failure to contest the *compensability* of the injury cannot place National Linen in a better position than it would have been in had it followed the requirements of Code § 65.1-93. Furthermore, there is credible evidence in the record to support the commission's finding that McGuinn reasonably believed that he was still entitled to compensation in view of the fact that the employer had paid compensation for a period of thirteen months without executing a memorandum of agreement.

Accordingly, the decision of the three judge panel of this court is reversed and the decision by the full commission is affirmed.

*Affirmed.*

Koontz, C.J., Baker, J., Barrow, J., Coleman, J., and Duff, J., concurred.

Moon, J., with whom Cole, J. and Keenan, J. join, dissenting.

We dissent because we believe that *Washington Metropolitan Area Transit Authority v. Harrison*, 228 Va. 598, 324 S.E.2d 654 (1985) controls the facts of this case.

Thomas McGuinn injured his ankle on August 5, 1983, while he was employed by National as a laundry truck driver. He underwent surgery for reconstruction of the lateral ankle ligaments and was released by his doctor for light duty work on August 6, 1984, with the only limitation being against going up and down stairs and lifting heavy objects. National voluntarily paid McGuinn temporary total disability benefits from November 22, 1983, through December 17, 1984. No memorandum of agreement was executed by the parties. On December 19, 1984, McGuinn returned to light duty work for National for the first time. The job did not require any heavy lifting or walking up and down stairs, but McGuinn advised his employer that he was incapable of performing the work. McGuinn's doctor recommended that he attempt to work no more than four hours a day but National had no such part-time position available. National ceased paying the benefits and McGuinn filed an application on January 23, 1985, for a hearing before the Industrial Commission, alleging

continued entitlement to temporary total benefits beginning August 5, 1983.

A partially disabled employee is entitled to be compensated at no more than two-thirds of the difference between his average weekly wage before the injury and what he is capable of earning thereafter. Code § 65.1-55. An employee who refuses selective employment within his work capacity forfeits his right to compensation. Code § 65.1-63. The Supreme Court has construed Code § 65.1-63, in conjunction with Code § 65.1-55, as encouraging the partially disabled employee to find selective employment even though there is no statutory duty to do so. *Big D Quality Homebuilders v. Hamilton*, 228 Va. 378, 382, 322 S.E.2d 839, 841 (1984). Thus, a partially incapacitated employee, absent an award from the Industrial Commission, is not entitled to temporary total disability benefits unless he has established that he has made a reasonable effort to market his remaining capacity for work. *Harrison*, 228 Va. at 600-01, 324 S.E.2d at 655-56.

In *Harrison*, the insurer had voluntarily paid benefits to the claimant and had submitted a signed memorandum of agreement to the Industrial Commission, but no award had been entered by the commission approving the voluntary agreement. The Supreme Court noted that "while the question of compensability of the injury had been mooted by the agreement, *Harrison's* procedural posture as to his entitlement was otherwise no different than that of the claimants in *Agee* and *Barbour*," two earlier cases in which the claimants had no memorandum of agreement. The Supreme Court held that each claimant bore "the burden of proving that he had made a reasonable effort to procure suitable work but was unable to market his remaining work capacity." *Id.* at 601, 324 S.E.2d at 656; *see also Pocahontas Fuel Co. v. Agee*, 201 Va. 678, 681, 112 S.E.2d 835, 839 (1960); *Pocahontas Fuel Co. v. Barbour*, 201 Va. 682, 684, 112 S.E.2d 904, 906 (1960). Prior to the holding in *Harrison*, the Industrial Commission would award temporary total disability benefits to a partially disabled employee unless the employer offered or found suitable light work. *See, e.g., Oakes v. Commercial Contracting Corp.*, 56 O.I.C. 237, 238 (1975). *Harrison* reversed this frequent Industrial Commission ruling and reaffirmed the holdings in *Agee* and *Barbour*.

In awarding McGuinn disability benefits, the commission stated:

If an agreement had been executed on this case, the claimant would have been placed under an Award, and the burden of proof would have shifted to the carrier to establish a change in condition which would have required evidence that the employee is either able to return to his regular employment or had been offered or provided selective employment within his capacity.

However, the commission stated that, because National paid benefits to McGuinn for thirteen months without entering into a memorandum of agreement, it would be held to the same standard: requiring the employer to show that it offered or provided selective employment to the employee that was within his capacity to perform.[4]

We believe that the Industrial Commission failed to follow *Harrison*. In *Harrison* there was an agreement but no award. There the Supreme Court stated that because Harrison had not proved the nature and extent of his disability in the Industrial Commission, he still had the burden of proving that he had marketed his remaining work capacity. Like *Harrison*, McGuinn had no award and it was proved that he was only partially disabled.[5] Therefore, like *Harrison*, McGuinn had the burden of proving that he had made a reasonable effort to market his remaining work capacity. Harrison, 228 Va. at 601, 324 S.E.2d at 656.

Whether McGuinn has made a reasonable effort to market his remaining work capacity, as defined in *Harrison*, is a factual issue to be determined by the commission and is binding on appeal if supported by credible evidence. *See Webb v. Eastern Airlines*, 1 Va. App. 421, 422, 339 S.E.2d 563, 564 (1986); Code § 65.1-98. The evidence supports the commission's factual finding that

---

[4] Voluntary payments of compensation or disability benefits by an employer do not waive the right of the employer to assert any defenses it may have absent fraud or concealment on the part of the employer or the insurer. *See Stuart Circle Hospital v. Alderson*, 223 Va. 205, 208, 288 S.E.2d 445, 446-47 (1982); *Clark v. United Airlines*, 223 Va. 197, 200, 288 S.E.2d 441, 442 (1982). There is no evidence of any fraud, concealment, or misrepresentation on the part of National or its insurer. Therefore, there is no basis for finding an estoppel on the part of National to justify the ruling that National has the burden of proof because it did not enter into a memorandum of agreement.

[5] This finding of fact regarding partial disability was made by the deputy commissioner, not reversed by the Industrial Commission, and was not appealed to this Court.

McGuinn was only partially disabled and had not made reasonable efforts to market his remaining work capacity.

Therefore, because *Harrison* requires an employee in McGuinn's situation to prove that he has made reasonable efforts to market his remaining work capacity, which he has failed to demonstrate, the decision of the Industrial Commission should be reversed.