COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Benton and Overton
Argued at Salem, Virginia


CITY OF ROANOKE FIRE DEPARTMENT

v.      Record No. 2561-94-3      MEMORANDUM OPINION[*]
                                  BY JUDGE JOSEPH E. BAKER
JOHN H. ANDERSON                  DECEMBER 19, 1995

            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Monica L. Taylor (James C. Joyce, Jr.;
            Gentry, Locke, Rakes & Moore, on briefs), for
            appellant.

            Mary L. Poletti (Clifton A. Woodrum; Dodson,
            Pence, Viar, Woodrum & Mackey, on brief), for
            appellee.


        The City of Roanoke Fire Department (employer) appeals from

a decision of the Workers' Compensation Commission (commission)

affirming the deputy commissioner's finding that (1) a de facto

award of compensation existed between John H. Anderson (claimant)

and employer, and (2) employer defended the claim without

reasonable grounds. Employer contends that (1) the de facto

award was erroneously made by the commission, (2) it was

erroneously precluded from presenting evidence that claimant's

disability was unrelated to his occupational disease, (3) it was

erroneously refused permission to proffer evidence in support of

its causation defense; and (4) the commission abused its

discretion in assessing attorney's fees against employer.

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Claimant is a fire marshal employed by employer. On May 28, 1992, claimant was found to be suffering from hypertension and was unable to work as a fire marshal. Employer accepted claimant's condition as compensable and an award was entered by the commission. Claimant returned to work in October 1992 and was assigned light-duty work. Approximately three months thereafter, he returned to full pre-injury employment. The parties executed an agreed statement of facts that terminated claimant's benefits.

In July 1993, approximately seven months after claimant's benefits had been terminated, he again left his work place on the advice of Dr. Jorge Roman who had previously treated claimant for hypertension. From July 14, 1993, until the end of February or the beginning of March, 1994, for approximately eight months, employer paid claimant workers' compensation benefits. Trena Hicks (Hicks), a claims adjuster for the city, explained that while a determination is being made whether a disability is work-related, the city, which is self-insured, pays employees workers' compensation at two-thirds of their salary rather than sick leave at one hundred percent of their salary. This approach prevents employees from having to pay the city back if it is later determined that the condition or injury for which they have been receiving sick leave is actually compensable under the Workers' Compensation Act.

When employer advised claimant that it would no longer pay

benefits, asserting that it had determined that claimant's disability was not related to his employment, on March 18, 1994, claimant filed an application for hearing asking that benefits payments be required to resume. In that application, claimant gave July 23, 1992 as the date of injury, stating work-related hypertension as the basis for the request and "change of condition" as the reason for the hearing. Claimant asserted that the nature of the change was that "[E]mployer cut off benefits in contradiction of medical reports by treating physician."

At the outset of the requested hearing, the deputy commissioner framed the issue:

> This is before us upon the claimant's claim requesting resumption of compensation which [employer] had been voluntarily paying the claimant since July 14th, 1993 but which was stopped during March 1994.

No objection was made and, in response, employer stated its defense:

> Our position is that [claimant's] disability is not related to his compensable condition but rather is related to his failure to follow the directions--medical directions of his physicians. Specifically, to take the antihypertensive medication and the diuretics that were prescribed by his doctor.

Prior to any testimony being taken at the hearing, the deputy commissioner ruled that the case was not in the proper procedural posture to permit employer to raise and present evidence on its causation defense. Based on this decision, the deputy commissioner refused to permit employer to proffer any evidence

- 3 -

regarding such defense. The deputy commissioner excluded (1) testimony from Hicks on the question of causation including two charts related to claimant's medications, prescription records from the Revco Pharmacy or a proffer of what those records would show, and (2) testimony from a druggist who had been subpoenaed to the hearing or a proffer of the testimony of the druggist.

At the hearing, claimant testified that he had not met with anyone from the city since June of 1993, and that he had not been advised either verbally or in writing that the city was only making workers' compensation payments to him while they investigated whether his condition was related to his hypertension. No supplemental memorandum of agreement was executed by the parties.

Hicks testified that the excuse claimant submitted in July 1993 was not specific as to why he was unable to work. Hicks advised claimant that she "needed a more definitive excuse . . . before a decision could be made as to how he would be carried." Hicks stated that she discussed with claimant "the fact that he was certainly entitled to workers' comp or sick leave but we needed doctor's information in detail to make those determinations." Hicks then received a letter from claimant's counsel asking that Hicks have no further communication with claimant.

Hicks further testified that Dr. Roman, claimant's treating physician, failed to supply her with medical reports until

February 1994 when she stopped paying his charges for services and medications. The prescriptions, she said, raised questions in her mind whether the claim was compensable. She added, "I'd get one piece of information which would say he was having headaches not related to the job. Then when I'd question a prescription for pain medication they'd say, 'No, I think it's secondary to hypertension.'" According to Hicks, these records also showed a problem with claimant's compliance with Dr. Roman's prescriptions for medications.

Hicks testified that she did not reach an agreement with claimant in regard to compensation or compromise of his claim. However, she did testify that "<u>there was an assumption that [claimant] does have hypertension and we had approved his claim. We had not denied it</u>." She further testified that <u>payments to claimant were "being carried [on the books] as Workers' Comp pay, in all honesty</u>." (Emphasis added.)

Upon this record, the deputy commissioner ruled from the bench that there was a "<u>de</u> <u>facto</u> award" in place by virtue of employer's voluntary payment of workers' compensation, and he entered a supplemental award in favor of claimant for compensation during his recurrent incapacity beginning July 14, 1994. The ruling from the bench was later memorialized in an opinion dated August 8, 1994. In that opinion, the deputy commissioner also assessed claimant's attorney's fee in the amount of $700 against employer "for having defended this matter

without reasonable ground."

Employer filed an application for review and, after consideration thereof, the commission affirmed the decision of the deputy commissioner.

The deputy commissioner and the commission relied upon National Linen Services v. McGuinn, 5 Va. App. 265, 362 S.E.2d 187 (1987), to support their decisions that employer's conduct created a de facto award. McGuinn is factually distinguishable from the case before us, however, the principle is on point.

In McGuinn, the initial injury occurred in August 1983. Without executing a memorandum of agreement or requesting the commission to enter an award, National paid McGuinn benefits from November 1983 to December 1984. On December 19, 1984, McGuinn returned to light duty but could not perform the work. When McGuinn failed to work, National discontinued payments. On January 23, 1985, McGuinn filed an application for hearing, claiming continued entitlements and that National had refused to execute and file a memorandum of agreement. National did not contest McGuinn's claim of a compensable injury. Instead, it defended on the ground that McGuinn had failed to market his remaining capacity. In an en banc decision, this Court held, "that because National Linen paid compensation benefits to McGuinn for thirteen months and failed to file with the commission a memorandum of agreement" a de facto award had been established which National was obligated to honor. McGuinn,

5 Va. App. at 270, 362 S.E.2d at 189. This Court added that if that award is to be altered, the burden is on National to prove by a preponderance of the evidence "a change in condition" as required by Code § 65.1-93. Id., 362 S.E.2d at 190.

McGuinn does not prohibit evidence that claimant's condition is not compensable, and neither the deputy commissioner nor the commission make that assertion. The deputy commissioner refused to consider the causation evidence saying that the posture of this case did not require it. In approving that ruling, the commission said:

> The employer sought to introduce evidence that the claimant's disability was not caused by his work-related hypertension, but by his failure to take his medications. The Deputy Commissioner ruled that having reached an agreement on compensability, the employer could not now challenge causation. We find that the Deputy Commissioner's procedural ruling is correct. Because there was a <u>de facto</u> award in effect, the employer must comply with Virginia Code § 65.2-708 and Rule 1.4(C). This entails paying compensation through <u>the date of the filing of an application for a change in condition</u>. In this case, the employer unilaterally terminated compensation in March, 1994, forcing the claimant to hire legal counsel and deplete his accrued sick and holiday pay.

(Emphasis added.)

We hold that, under the facts of this case, the commission did not err when it held that employer's assumption that the claim was compensable, together with the fact that the investigation continued for more than eight months even after claimant returned to light duty, sufficiently supported the

award.  We further hold that the award having been established, the burden was on employer to specifically plead a change of condition pursuant to the requirements of Code § 65.2-708 if it wished to present the evidence refused by the deputy.  Until then, the case was not in a posture to consider that evidence.

Finally, employer asserts that the commission abused its discretion when it assessed attorney's fees to employer.  The award of fees is left largely to the discretion of the commission and will not be disturbed in the absence of an abuse of discretion.  Jensen Press v. Ale, 1 Va. App. 153, 159, 336 S.E.2d 522, 525-26 (1985).  We cannot say that the commission's determination that an award of fees should be made discloses an abuse of its discretion.

Accordingly, the decision of the commission is affirmed.

Affirmed.