COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Agee and Senior Judge Hodges
Argued at Chesapeake, Virginia


CASEY CHEVROLET CORPORATION AND
 PENNSYLVANIA NATIONAL MUTUAL
 CASUALTY INSURANCE COMPANY
                                    MEMORANDUM OPINION* BY
v.   Record No. 1761-00-1           JUDGE WILLIAM H. HODGES
                                        FEBRUARY 20, 2001
PETER R. DANFORTH


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

         W. C. Walker (Donna White Kearney; Taylor &
         Walker, P.C., on brief), for appellants.

         Robert J. Macbeth, Jr. (Rutter, Walsh,
         Mills & Rutter, L.L.P., on brief), for
         appellee.


    Casey Chevrolet Corporation and its insurer (hereinafter

referred to as "employer") appeal a decision of the Workers'

Compensation Commission awarding temporary total disability

benefits to Peter R. Danforth (claimant).  Employer contends

that the commission erred in (1) applying the doctrine of

imposition to toll the applicable statute of limitations; (2)

entering a de facto award in favor of claimant; and (3) finding

that claimant adequately marketed his residual work capacity

from May 13, 1997 through December 31, 1997.  Finding no error,

we affirm.

─────────────────────
        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal, we view the evidence in the light most favorable to the prevailing party below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

So viewed, the evidence proved that on March 23, 1992, claimant sustained a compensable lower back injury while working for employer as an auto technician. Employer accepted the claim as compensable and the commission entered an award on July 14, 1992, for temporary total disability benefits beginning May 18, 1992.

On February 22, 1993, claimant returned to work for employer in a light-duty capacity as quality control inspector, at a wage greater than or equal to his pre-injury average weekly wage. The parties executed and filed with the commission an Agreed Statement of Fact terminating claimant's award as of February 22, 1993.

After claimant returned to work, he missed work on December 30, 1994, February 21, 1995, March 24, 1995, and April 7, 1995, due to doctor's appointments for his back injury. Employer paid claimant his full salary for those missed days. Claimant testified that employer told him that there would be paperwork involved in submitting a claim for his lost time to the insurance carrier and, therefore, employer would pay his wages in lieu of workers' compensation benefits.

On May 4, 1995, claimant underwent follow-up surgery causally related to his compensable back injury to correct a

-

bulging disc at the L4-L5 level. He missed approximately eight weeks of work due to the surgery. Again, employer paid claimant wages in lieu of compensation benefits for that period. Claimant also missed various days of work though July 26, 1996, due to doctor's appointments. Employer paid claimant his full wages for all missed days of work.

Claimant and his wife, Melanie Danforth, testified that in 1995, before claimant's surgery, Mrs. Danforth contacted employer's insurance company and the commission. Representatives of both entities told her that the statute of limitations for any additional compensation benefits had expired. As a result, claimant and his wife met with an attorney for a fifteen-minute conference. The attorney told them "[Y]es, the statutes had run out," even though Mrs. Danforth informed the attorney that claimant had been paid wages in lieu of compensation for all days of work he had missed.

In early May 1997, employer terminated claimant's light-duty employment. Employer offered claimant two other jobs; however, claimant's physician did not approve those jobs as being within claimant's restrictions. Employer also offered claimant the option of going back on workers' compensation benefits.

On May 20, 1997, claimant filed an application seeking temporary total disability benefits beginning May 9, 1997. The commission set the application for hearing on January 30, 1998.

-

On February 5, 1998, the commission, at claimant's request that his claim be withdrawn, entered an order dismissing the May 20, 1997 claim.

On February 9, 1999, claimant filed another claim requesting that the commission re-open his workers' compensation claim and convene a hearing that was previously scheduled for January 30, 1998.  On May 7, 1999, the commission held a hearing on the February 9, 1999 claim.  At the hearing, claimant requested an award of temporary total disability benefits for May 12, 1997 and continuing and a de facto award for the following dates:  December 30, 1994; February 21, 1995; March 24, 1995; April 7, 1995; May 4, 1995 through July 1, 1995; October 23, 1995; November 22, 1995; January 24, 1996; February 1, 1996; and July 26, 1996.

The commission awarded claimant compensation benefits and ruled as follows:

> Here, salary paid to the claimant by the pre-injury employer for the period February 22, 1995 through February 27, 1997, must be considered compensation under [Code § 65.2-708(C)].  This yields a filing date no later than February 22, 1997.  In the present case, the claimant filed applications both on May 20, 1997 and February 9, 1999.  This does not end our inquiry as the various doctrines that would effectively toll the statute of limitations or render the issue moot have not been considered.

  *       *       *       *       *       *       *

-

We do find that the doctrine of imposition applies to the case at bar. . . .

The employer in this case voluntarily paid wages in lieu of compensation benefits for:  December 30, 1994; February 21, 1995; March 24, 1995; April 7, 1995; May 4, 1995 through July 5, 1995; October 23, 1995; November 22, 1995; January 24, 1996; February 1, 1996; and July 26, 1996.  The claimant's uncontradicted testimony is that he approached a member of management regarding the mechanism by which he would be paid for all of those lost dates.  He testified that the employer informed him that the paperwork necessary to get paid through the workers' compensation carrier would be too time consuming and, therefore, told the claimant that it would pay wages in lieu of compensation benefits.  Under the Act, an employer and carrier is required to submit to the Commission executed agreements relative to any compensation benefits that are due and payable to an injured employee.  This was not done in this case.  Further, we note the claimant's uncontradicted testimony that he contacted the Commission prior to his surgery in May 1995, inquiring as to whether he could file a change in condition application.  He was incorrectly informed that the statute of limitations had expired, even though he informed the Commission employee that he was receiving pay equal to or greater than his pre-injury average weekly wage from the pre-injury employer. We find, under the totality of the circumstances, that the doctrine of imposition works to toll the statute of limitations in this case.

We also find that the claimant is entitled to a de facto award in this case, given the long and consistent history of the employer ignoring its duty to file the appropriate agreements with the Commission relative to payments made to the claimant on various dates through July 24, 1996.

-

On the issue of disability, we find that the claimant is entitled to an award of temporary total disability benefits from May 13, 1997 through December 31, 1997. The claimant reasonably marketed his residual capacity through the latter date, and thereafter sought employment only once per month.

## I.  Imposition

The doctrine of imposition "'empowers the commission in appropriate cases to render decisions based on justice shown by the total circumstances even though no fraud, mistake, or concealment has been shown.'" Butler v. City of Va. Beach, 22 Va. App. 601, 605, 471 S.E.2d 830, 832 (1996) (quoting Odom v. Red Lobster # 235, 20 Va. App. 228, 234, 456 S.E.2d 140, 143 (1995)) (additional citation omitted).  "The doctrine focuses on an employer's or the commission's use of superior knowledge of or experience with the Workers' Compensation Act or use of economic leverage, which results in an unjust deprivation to the employee of benefits warranted under the Act." Id.  In order for the doctrine to apply, the record must show "a series of acts by the employer or the commission upon which a claimant naturally and reasonably relies to his or her detriment." Id.

Credible evidence in the record proved that a "series of acts by the employer or the commission, [both of which had superior knowledge of and experience with the Act], upon which [claimant] naturally and reasonably relied to his . . . detriment" caused him not to file a timely change-in-condition

-

application.  Id.  Claimant pointed to affirmative statements on the part of employer and the commission that led him to believe he need not or could not file a claim.  Accordingly, the commission did not err in applying the doctrine of imposition to toll the statute of limitations with respect to the February 9, 1999 application.

## II.  De Facto Award

In Ryan's Family Steak Houses, Inc. v. Gowan, 32 Va. App. 459, 528 S.E.2d 720 (2000), we recognized that Code § 65.2-701(A) authorizes de facto awards:

> De facto awards of compensation have been long recognized by this Court, beginning with National Linen Service v. McGuinn, 5 Va. App. 265, 362 S.E.2d 187 (1987) (en banc).  De facto awards are premised on Code § 65.2-701(A).  The statute reads, in pertinent part:
>
> If after injury . . . the employer and the injured employee . . . reach an agreement in regard to compensation or in compromise of a claim for compensation under this title, a memorandum of agreement in the form prescribed by the Commission shall be filed with the Commission for approval.
>
> In McGuinn, we held that where the employer has stipulated to the compensability of the claim, has made payments to the employee for some significant period of time without filing a memorandum of agreement, and fails to contest the compensability of the injury, it is "reasonable to infer that the parties ha[ve] reached an agreement as to the payment of compensation," and a de facto award will be recognized.

Id. at 462-63, 528 S.E.2d at 722 (footnote omitted).

-

In this case, claimant sustained a series of absences from work causally related to his compensable injury over an eighteen-month period.  Employer voluntarily chose to pay claimant his salary for those absences and told claimant it chose to do so instead of filling out the time-consuming paperwork necessary to allow claimant to be paid through the workers' compensation carrier.  As a result, employer failed to file the appropriate agreements required by statute.  See Code § 65.2-701.  Thus, the commission did not err in treating the parties' agreements for employer to pay claimant his regular salary for the absences in lieu of compensation as a de facto award, as if agreements had been filed and approved by the commission for those dates.

### III.  Marketing

A partially disabled employee is required to make reasonable efforts to market his residual earning capacity to be entitled to receive continued benefits.  See McGuinn, 8 Va. App. at 269, 380 S.E.2d at 33.  "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission."  Id. at 270, 380 S.E.2d at 33.  "What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." The Greif Companies (GENESCO) v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).  We hold that the commission did not err

-

in determining that claimant adequately marketed his residual work capacity.

It was undisputed that after employer terminated claimant from his job in May 1997, he received unemployment compensation benefits for the maximum allowable time, approximately six to seven months, up through the end of 1997. During that time, he sought employment at least two to three times per week, documented those job searches, and submitted them to the unemployment commission. None of these job searches resulted in an offer of employment to claimant. Under these circumstances, we find that credible evidence supports the commission's conclusion that claimant made a reasonable effort to market his residual work capacity through December 31, 1997.

For these reasons, we affirm the commission's opinion.

Affirmed.