COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, Russell and Malveaux
Argued at Lexington, Virginia


JENNIFER YVONNE KELLEY
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1083-16-3                 JUDGE WESLEY G. RUSSELL, JR.
                                                      DECEMBER 13, 2016

MONTICELLO AREA COMMUNITY
  ACTION AGENCY AND ACCIDENT FUND GENERAL
  INSURANCE COMPANY

                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Bradford M. Young (Hammond Townsend, PLC, on briefs), for
              appellant.

              Amanda S. Tapscott (McCandlish Holton, P.C., on brief), for
              appellees.


       Jennifer Yvonne Kelley, claimant, appeals the decision of the Virginia Workers'

Compensation Commission denying her claim for benefits.  Specifically, she challenges the

Commission's failure to find a *de facto* award and its conclusion that her injury did not arise

from her employment.  For the reasons that follow, we affirm the Commission's denial of

benefits.

                                    BACKGROUND

       "On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below."  Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83,

608 S.E.2d 512, 517 (2005) (*en banc*).

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At the time of her claimed injury, claimant had been employed in various positions by the Monticello Area Community Action Agency, employer, for eight years. During the relevant time period, her duties included cooking breakfast for children, the setting and cleaning of tables and other related custodial tasks, and ordering and stocking food. The position was subject to an eight-week summer furlough, but she had not yet been in her current position long enough to have been subject to the summer furlough. She earned an $11 hourly wage.

On February 21, 2013, claimant was completing some paperwork at the end of her workday. As she was taking the papers to another office, she tripped walking across a rug, and, in trying to catch herself, she reached out. With her right hand, she grabbed a mop that was sitting in a bucket and, as she continued to fall over, the mop and bucket fell on top of her. Claimant was wearing nonskid shoes, and the rug had been positioned in the hall for a while. The rug was a thin rug with a rubber trimming around it. The rug was lying flat when claimant tripped over it, and there was no evidence that it suffered from any defects. As a result of her fall, claimant injured her breast and left thumb.

Claimant reported the incident to employer the next day. She sought medical care from an urgent care clinic on March 5, 2013. She reported to the medical provider that she "was mopping the floor [and] tripped, bending my L[eft] thumb backwards."

On March 8, 2013, employer filed its "First Report of Injury." Based on claimant's report, the employer listed the cause of the fall as a "[f]all, [s]lip or [t]rip." Employer reported to its insurance carrier that claimant had said she "tripped over a bucket and fell."

She returned to work, missing only a few days for appointments and swelling, but was able to perform her duties with a splint and pain medications until April 1, 2014, when she had surgery performed on her hand. Claimant was released to light duty in June, but employer had no such work.

In addition to paying for claimant's medical bills, employer made voluntary temporary total disability payments from April 1 through October 6, 2014. On May 8, 2014, employer informed the Commission that it had sent claimant agreement forms on April 24th. On May 12, 2014, claimant filed a claim for benefits with the Commission, claiming an injury to her thumb. As the cause of the injury she asserted: "Hit my hand on something"; "Trip over rug"; "went to catch myself. I grab mop handle [and] went down mop bucket and all." She did not mark any specific request for particular benefits, but requested a "hearing due to the change you have or [are] planning to make to my benefits." Her claim noted average gross earnings of $440 per week. On June 5, 2014, the Commission sent a notice to claimant requesting that she clarify the benefits she was seeking.

On June 18, 2014, the Commission sent claimant a notice regarding an agreement form request. The notice stated, "[employer's] Claim Administrator has advised the Commission they have agreed to pay medical and/or wage benefits on your claim" but further explained that "an award has not been entered." On June 23, claimant filed another claim for benefits and application for hearing. This claim, alleging ongoing loss of work, sought "an award of temporary total disability benefits commencing February 21, 2013, through the present and continuing" and a lifetime award of medical benefits.

On July 1, 2014, the Commission sent a request for response inquiring whether the agreement forms previously indicated as sent would "be revised to show the requested beginning date." On July 9, 2014, employer informed the Commission that agreement forms had been sent to claimant on May 9.

On September 4, 2014, claimant filed a third claim for benefits. This claim listed the chest as well as the thumb as the injured body parts. It sought total and partial wage loss,

lifetime medical benefits, and compensation for permanent disability. The average weekly wage was marked "TO BE DETERMINED."

On October 15, 2014, the Commission received an Award Agreement, dated April 20, 2014, establishing a temporary total disability award of $293.33 (based on a pre-injury weekly wage of $440) for the injury to claimant's thumb. The form was signed only by claimant, so it was forwarded to employer's carrier for its endorsement. On November 12, 2014, the Commission received a different Award Agreement form. It was signed by both claimant and employer, on October 17 and November 12, 2014, respectively, and provided claimant a $238.75 per week award of temporary total disability benefits beginning April 1, 2014, for her thumb injury. The award was calculated based on a pre-injury weekly wage of $357.51. Later that same day, employer informed both claimant's counsel and the Commission that it "no longer agree[d] to entry of an award in this matter."

The matter proceeded to an evidentiary hearing before the deputy commissioner on April 4, 2015. Claimant described the accident as follows:

> I tripped and when I was falling I went to grab and there was a mop and a bucket setting there and I grabbed the mop. When I went down I guess I pulled it over and everything came over on me . . . . And I bent my thumb back and I had bruises on [m]y chest . . . .

When asked how she tripped, she responded, "I guess it was [a] rug there and it might have just been the rubber on the rug and I didn't lift my, but . . . ." When questioned for clarification, claimant reiterated, "I tripped on the rug." Claimant conceded that she had been walking normally and that there was nothing abnormal about the rug. She noted that she had grabbed a mop with her right hand and indicated that she was unsure how she had hurt her left thumb. Claimant further testified regarding her efforts to market her residual capacity.

A human resources director of employer also testified.  She relayed that when claimant reported the accident to her, claimant attributed her fall to tripping over the mop and bucket.  The director had provided that description in her report to employer's insurance carrier.  Documentary evidence, including medical reports, referenced both the mop and bucket and the rug in relation to claimant's fall.  The deputy commissioner noted the discrepancies in the evidence related to the cause of claimant's accident and resulting injuries.

The parties also addressed the calculation of claimant's average weekly wage.  The dispute was based on claimant's change in position with employer and her now being subject to future furlough.  Claimant, challenging the employer's calculation of the average weekly wage, nevertheless asserted her belief that "the payment of those benefits even at the wrong compensation rate for six months, would establish a *de facto* order."  After the hearing, the deputy commissioner allowed the parties time to determine whether they could reach an agreement as to claimant's pre-injury weekly wage, but by letters dated April 27 and 29, 2015, they informed the deputy commissioner that they could not agree on a wage calculation and set forth their respective positions.

On June 9, 2015, the deputy commissioner issued his decision.  He found that there was no irregularity in the rug over which claimant tripped.  He noted there was some evidence of a bucket being involved in the accident, but stressed that "claimant's testimony made no mention of a bucket[.]"  The deputy commissioner accordingly concluded that claimant's fall did not arise out of her employment.  In addition, emphasizing the dispute regarding the weekly wage, he found the parties had not reached an agreement so that there was no basis upon which to find a *de facto* award.  Based on his findings, the deputy commissioner dismissed the claim.

Claimant sought full Commission review of the deputy commissioner's decision, seeking reversal of both his findings.  Claimant argued the deputy commissioner erred in not considering

the presence of the mop and bucket when they "were present at the accident site precisely as a result of [claimant's] performance of her mopping duty, [and] their role in the mechanism of her injury means that her accident with resulting injury arose from a condition of her employment." With respect to the *de facto* award issue, claimant asserted that "[e]vidence readily shows the existence of such an agreement. It also demonstrates that the [e]mployer has not acted in good faith in contesting the compensability of her claim."

On May 31, 2016, the Commission issued its opinion denying the claim. Relying on claimant's testimony, the Commission found that "[t]he flat rug, standing alone, did not create an increased risk of injury. As a consequence, the claimant failed to prove her accident arose from a risk of her employment." The Commission majority, citing its own precedent, noted that "[t]he Commission will not impose a *de facto* award if the employer asserts a defense that relates to the components of an initial award . . ." (internal quotation marks and citation omitted), and based on its acceptance of employer's defense that the accident did not arise from the employment, determined that "imposing a *de facto* award where there was no compensable accident would be contrary to the Virginia Workers' Compensation Act and would discourage [employers] from making voluntary payments." The Commission further rejected claimant's argument that employer acted in bad faith, stating "[t]he Commission allows either party to withdraw agreement to an award within the period for requesting review." Finally, the Commission concluded that claimant had not detrimentally relied upon the employer's voluntary payments, noting that

> the claimant had preserved the statute of limitations by having already filed several claims. She was afforded a hearing on the merits of her case some five months after the agreement was withdrawn, thus [giving] her ample time to prepare. We do not find the defendants' decision to contest the claims at the evidentiary hearing unfairly prejudiced the claimant.

- 6 -

One commissioner dissented. Taking no issue with the Commission's factual findings regarding the accident or the cause of the claimed injuries, the dissenting commissioner would have awarded benefits because of his conclusion that "[a] *de facto* award was appropriate in this case." In support of his conclusion, the dissenting commissioner stated that "the only reasonable interpretation of the evidence establishes the insurer's last minute change of position was intended to gain an unfair advantage[;]" however, he did not identify how claimant had detrimentally relied on employer's voluntary payments or any prejudice that she had suffered.

On appeal to this Court, claimant asserts the following assignments of error:

> I. The Workers' Compensation Commission erred in finding that [claimant] did not receive a *de facto* award, including the Commission's finding that [employer] acted in good faith in disputing the compensability of her injury.
>
> II. The Workers' Compensation Commission erred in failing to find that the mop and bucket contributed to [claimant's] accident and resulting injury.
>
> III. The Workers' Compensation Commission erred in failing to find that a condition of [claimant's] workplace caused her to suffer an accident with resulting injury.

## ANALYSIS

It is well settled that "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Artis, 45 Va. App. at 83-84, 608 S.E.2d at 517 (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988)). "The scope of a judicial review of the fact finding function of [the C]ommission [] is 'severely limited, partly in deference to the agency's expertise in a specialized field.'" Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 4, 526 S.E.2d 267, 268 (2000) (quoting Metropolitan Cleaning Corp. v. Crawley, 14 Va. App. 261, 266, 416 S.E.2d 35, 38 (1992)). Nevertheless, "the [C]ommission's legal determinations are not

binding on appeal and will be reviewed *de novo*." Wainwright v. Newport News Shipbuilding &

Dry Dock Co., 50 Va. App. 421, 430, 650 S.E.2d 566, 571 (2002).

## I. *De facto* Award

Claimant, in essence, argues that the Commission should not have reached the merits of

her underlying claim because she was entitled to a *de facto* award. She argues that the

employer's voluntary payments, coupled with what she asserts were employer's stipulation to

compensability and failure timely to contest the claim,[1] dictate that the Commission find she was

subject to a *de facto* award. Furthermore, she asserts that "the absence of 'unfair prejudice' is

not an element that [she was required to] show to prove her receipt of a *de facto* award." In this,

she is mistaken.

Although the Workers' Compensation Act "nowhere mentions *de facto* awards, we

embraced the idea in National Linen Service v. McGuinn, 5 Va. App. 265, 271, 362 S.E.2d 187,

190 (1987) (*en banc*)[.]" Lysable Transp., Inc. v. Patton, 57 Va. App. 408, 414, 702 S.E.2d 596,

599 (2010). Thus, "[a] *de facto* award is a legal fiction crafted by the courts, 'a creature of case

law not statutory law.'" Id. at 414, 702 S.E.2d at 598 (quoting Ryan's Family Steak Houses v.

Gowan, 32 Va. App. 459, 465, 528 S.E.2d 720, 723 (2000) (Bumgardner, J., concurring)).

Because it is a judge-made doctrine, we have been careful not to expand *de facto* awards beyond

their initial purposes and parameters. Id. at 415, 702 S.E.2d at 599; Roske v. Culbertson Co., 62

Va. App. 512, 523, 749 S.E.2d 550, 556 (2013).

---

[1] Employer argues that the dispute over the average weekly wage and its withdrawal of the signed agreement within the time allowed under Commission precedent compels a finding that there was no agreement as to compensability and that its successful defense of the claim dictates a finding that it timely contested the claim. The Commission agreed with employer on both issues. Given our determination that a *de facto* award is inappropriate because claimant did not detrimentally rely on the conduct of employer, we need not reach these issues.

The doctrine was created to address a situation in which an employer's voluntary payments without the entry of an award caused an unwitting claimant to forfeit his claim or otherwise prejudice his rights under the Act. Thus, it always has been grounded in principles of estoppel. Roske, 62 Va. App. at 521, 749 S.E.2d at 555 (holding "that the concept of a *de facto* award is grounded in the well-established principle of estoppel"); McGuinn, 5 Va. App. at 271-72, 362 S.E.2d at 190 (imposing a *de facto* award because "the doctrine of estoppel may appropriately be invoked" under the facts of the case).

To establish estoppel, a party must establish that he relied to his detriment on the representations or conduct of another. See, e.g., Stanley's Cafeteria, Inc. v. Abramson, 226 Va. 68, 73, 306 S.E.2d 870, 873 (1983); Ford Motor Co. v. Switzer, 140 Va. 383, 395-96, 125 S.E. 209, 212-13 (1924); Atlantic C. L. R. Co. v. Bryan, 109 Va. 523, 526, 65 S.E. 30, 31 (1909). Detrimental reliance requires that "the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than that which he would have occupied except for that conduct." Roske, 62 Va. App. at 522, 749 S.E.2d at 555 (internal quotation marks and citations omitted). Accordingly, the *de facto* award doctrine does not "apply where an employee has neither suffered prejudice nor been placed in a more disadvantageous position as a result of the absence of an actual award." Id. at 523, 749 S.E.2d at 556; compare favorably McGuinn, 5 Va. App. at 271, 362 S.E.2d at 190 (holding that a *de facto* award was appropriate given that employer's conduct "misled [claimant] *to his detriment*" (emphasis added)).

Here, the record reveals that claimant was neither prejudiced nor placed in a more disadvantageous position by employer's voluntary payments or other conduct. As the Commission found,

> the claimant had preserved the statute of limitations by having already filed several claims. She was afforded a hearing on the merits of her case some five months after the agreement was withdrawn, thus [giving] her ample time to prepare. We do not

> find the defendants' decision to contest the claims at the evidentiary hearing unfairly prejudiced the claimant.

There is not even a suggestion that claimant's ability to prove her case was in any way prejudiced.[2] In fact, she does not argue that she suffered actual prejudice, arguing instead that a showing of prejudice was not required. Because such a showing always has been a requirement for the application of the *de facto* award doctrine, Roske, 62 Va. App. at 523, 749 S.E.2d at 556, the Commission did not err in concluding that the facts did not give rise to a *de facto* award.

## II. Cause of the Injury

Appellant next challenges the Commission's failure to conclude that the mop and bucket caused or at least contributed to her fall and resultant injuries. As such, she challenges a factual finding of the Commission as to the cause of her accident. "Decisions of the [C]ommission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511 (2002) (internal quotation marks and citations omitted).

Here, the Commission determined that the cause of claimant's fall and resulting injuries was a non-defective rug that was lying flat at the time of the fall. The basis for this conclusion was claimant's own testimony, from which the Commission concluded that claimant's "injury occurred when she tripped on a rug. The rug itself was not described as defective, and it was

---

[2] At oral argument, claimant adopted the position of the dissenting commissioner, who theorized that "a claimant who has signed agreements prepared by the employer and received ongoing wage benefits for months" *could* suffer prejudice in a similar situation if he or she failed to market residual capacity because the employer did not notify him or her of an obligation to do so. Specifically, he reasoned that "[n]o reasonable person who received wage benefits for a lengthy time and who signed an agreement prepared by the insurer confirming entitlement to that compensation would independently perceive a duty to market residual work capacity as condition to entry of an award." Such hypothetical prejudice is not present in this case, where the claimant put on evidence of her marketing activities and the sufficiency of her marketing activities played no role in the Commission's decision to deny her benefits. Furthermore, we note that the duty to market residual capacity arises only after a claimant suffers a *compensable* injury, see Code § 65.2-510; here the Commission found that claimant suffered no such injury.

lying flat on the floor at the time of the claimant's accident. No foreign substances were alleged to have contributed to the accident." In short, claimant's testimony provided credible evidence from which the Commission could determine that her fall was caused by walking across a rug and that the mop and bucket played no role in her fall or resulting injuries.

Claimant argues that there was evidence in the record that the mop and bucket were involved in the accident. She cites her own statements and the testimony of the human resources director, arguing that references to the mop and bucket require a finding that the mop and bucket caused or contributed to the accident and resulting injury.

The Commission, as factfinder, was free to reject the evidence that might suggest that the mop and bucket caused or contributed to the fall and resulting injuries as opposed to merely being present when the fall and resulting injuries occurred.[3] "The fact that contrary evidence may appear in the record 'is of no consequence if there is credible evidence to support the [C]ommission's finding.'" Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 177, 468 S.E.2d 152, 155 (1996) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)). Claimant bore the burden of proof, Shepherd, 39 Va. App. at 292-93, 572 S.E.2d at 512, and thus, was required to convince the Commission that the mop and bucket actually played a role in her fall and resultant injuries, not that they might have. We cannot say that the Commission erred in finding that the evidence did not compel such a conclusion.

### III. Injury Arising Out of Employment

Finally, claimant argues that the Commission erred in concluding that her injury did not arise out of her employment. Specifically, she argues that the Commission erred in concluding a condition of her workplace did not contribute to her fall.

---

[3] Claimant offers no explanation as to how grabbing a mop with her *right* hand as she was falling caused an injury to her *left* thumb.

> Whether an injury arises out of . . . employment involves a mixed
> question of law and fact, which we review *de novo* on appeal.
> Accordingly, although we are bound by the [C]ommission's
> underlying factual findings if those findings are supported by
> credible evidence, . . . we review *de novo* the [C]ommission's
> ultimate determination as to whether the injury arose out of the
> claimant's employment.

Snyder v. City of Richmond Police Dep't, 62 Va. App. 405, 411-12, 748 S.E.2d 650, 653-54 (2013) (internal quotation marks and citations omitted).

For an injury to arise out of employment, it must have been caused by an actual risk of the employment as opposed to a risk that the claimant would face in carrying out day-to-day activities apart from the employment. "The actual risk standard . . . necessarily excludes an injury caused by *a hazard to which the workman would have been equally exposed apart from the employment.* The causative danger must be peculiar to the work and not common to the neighborhood." Bernard v. Carlson Companies-TGIF, 60 Va. App. 400, 405-06, 728 S.E.2d 508, 511 (2012) (internal quotation marks and citations omitted).

The classic example of an injury being caused by a risk of the neighborhood as opposed to arising out of the employment is an employee tripping while traversing a set of stairs. It has long been recognized that, "[e]ven though the employer provided the steps, and encouraged the employee to use them, if there is 'nothing unusual about or wrong with the steps,' an employee who trips over them cannot show the accident 'arose out of' the employment." Id. at 407, 728 S.E.2d at 511 (quoting County of Chesterfield v. Johnson, 237 Va. 180, 185-86, 376 S.E.2d 73, 76 (1989)); see also Southside Va. Training Ctr. v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000) (holding that "[s]imple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment").

We perceive no meaningful difference between an employee tripping on ordinary, non-defective stairs and tripping while walking across a flat, non-defective rug. Absent some

defect or other exceptional circumstance, tripping while walking on a flat rug is a risk that an employee faces both in and out of the employment setting.[4]  Accordingly, given its factual findings, the Commission correctly concluded that claimant's injury did not arise out of her employment.

CONCLUSION

For the foregoing reasons, we affirm the Commission's denial of benefits.

Affirmed.

---

[4] With credible candor claimant recognizes this, noting that her arising out of argument "assumes . . . that the Commission erred in failing to find that the mop and bucket played a part in [claimant]'s accident and resulting injury."  Given our conclusion that the evidence supports the Commission's finding that the mop and bucket did not cause or contribute to the fall and resulting injuries, claimant's arising out of argument necessarily fails.