# Richmond

ISLAND CREEK COAL COMPANY V. LESLIE EARL FLETCHER.

March 7, 1960.

Record No. 5093.

Present, All the Justices.

The opinion states the case.

*C. H. Combs* (*Combs & Street*, on brief), for the appellant.

*Carl C. Gillespie* (*Gillespie & Gillespie*, on brief), for the appellee.

MILLER, J., delivered the opinion of the court.

The evidence in this case was presented to a hearing commissioner who concluded that claimant had sustained a total wage loss as a result of silicosis, an occupational disease contracted while in the company's employ. Although he found that Fletcher had suffered partial physical disability, yet he determined that the partial physical disability resulting from the second stage silicosis had barred claimant from employment in the only field of labor in which he was trained and qualified to work. Claimant was awarded compensation benefits under § 65-51, Code 1950, as amended, because of total incapacity for work resulting from the disease, to continue for the statutory period unless subsequent conditions justified a modification. The company appealed and upon review before the full Commission, the hearing commissioner's findings of fact and conclusions of law were adhered to and affirmed by unanimous decision.

The question to be determined is whether the evidence justified the Commission in finding that claimant had suffered total incapacity for work due to the occupational disease with which he suffered.

It is conceded that the malady from which Fletcher suffered has been diagnosed as second stage silicosis and that he has suffered partial physical incapacity, but the company insists that the evidence does not show that claimant has suffered either partial or total incapacity for work because of the malady.

Summarized the evidence follows:

Leslie Earl Fletcher, who was fifty-eight years of age when the hearing was held on February 18, 1959, had been employed by Island Creek Coal Company and its predecessor, Red Jacket Coal Company, for seventeen years as general mine foreman at a weekly wage of $200. As foreman he followed the loads of coal through the mine, which necessitated the inhaling of quantities of silica dust. He last worked on May 10, 1958, at which time he was able to perform his duties without difficulty, but it is conceded that if he is disabled by silicosis, he contracted the disease while in the employ of the company.

On May 12, 1958, he was treated at Mattie Williams Hospital, Richlands, Virginia, for a kidney infection and during the course of routine tests, it was determined that he had second stage silicosis. The pertinent part of the report from that hospital, made by Dr. James M. Peery, follows:

"* * * Routine chest x-ray revealed a diffuse stringy to nodular fibrosis of both lungs. There was coalescence of these nodules in the

apices. There was small focal areas of emphysema present. The heart shadow was normal. Impression was second stage pneumoconiosis.

"On his discharge from the hospital the patient was advised not to work in dust any more. There is apparently some question as to when this pneumoconiosis developed and as far as my records are concerned this is the first time I could find any record of a chest x-ray. This was done on May 12, 1958.

"In my opinion this patient is definitely unable to work in a coal mine and will not be able to work in a coal mine again."

On September 2, 1958, claimant was examined at Bluefield Sanitarium, Bluefield, W. Va., by Drs. S. G. Davidson and Henry F. Warden, and their combined opinion was that he had a late second stage silicosis with a 30 per cent decreased capacity to do physical work.

Claimant testified that for several months before he had to go to the hospital because of the kidney infection, he had suffered shortness of breath while doing his work. However, he admitted that after his kidney infection cleared, he was in as good shape physically as he was before he went to the hospital and could have performed his duties as foreman. About ten days after he left the hospital and was aware that he had silicosis, he informed the company superintendent that he was suffering from that disease. He desired to resume work and applied to the company for reemployment about July 1st, 1958, but advised his supervisor that he could not go back into the mines and would like outside work of a supervisory nature. He answered a question about resuming work in the mine as follows:

"Q. Could you have at that time continued your job as general mine foreman?

"A. I could, but if I get in more dust I'd be a dead man, that's what I was advised by four doctors. They say I might go on for a year and then I'd be plumb knocked out."

The company had no work suitable for claimant, and he later secured outside supervisory work at the Nin Coal Company, which was operated by his son and another man, but at an average weekly wage of $100 a week. He entered this new employment on August 15, 1958, but said that he seemed "to be growing worse" and "wasn't able to continue at that work" after November 15, 1958. Since that time he has had no employment.

The Commission having found in favor of claimant, it follows

that all just inferences deducible from the evidence must be resolved by us in his favor. The Commission's finding may not be disturbed if it be sustained by credible evidence. Section 65-94, Code 1950; *Carter* v. *Hercules Powder Co.*, 182 Va. 282, 28 S. E. 2d 736; *Stephens* v. *Wright & Co., Inc., et al.*, 194 Va. 404, 73 S. E. 2d 399.

It is clear from the evidence that claimant sustained partial physical disability because of the occupational disease. Though his physical disability is partial, yet the award of total incapacity payments under § 65-51, Code 1950, is warranted if the Commission could reasonably find from the evidence that his disability rendered him unable to market his remaining capacity for work.

"One who has only a partial physical disability may obtain total incapacity payments on proof that he was unable to market his remaining capacity for work. * * *" Horovitz, *Injury and Death under Workmen's Compensation Laws*, p. 270. *Foust Coal Co.* v. *Messer*, 195 Va. 762, 80 S. E. 2d 533.

The factual status of this case is distinguishable from that of *Pocahontas Fuel Company, Inc.* v. *Barbour*, 201 Va. 682, 112 S. E. 2d 904, and *Pocahontas Fuel Company, Inc.* v. *Agee*, 201 Va. 678, 112 S. E. 2d 835, this day decided. In the *Barbour* case there was no evidence that claimant made any effort to obtain employment between the time that he was laid off by the company on December 23, 1957, and notified to return on June 13, 1958, or after he was denied re-employment because of his occupational disease. In the *Agee* case it does not appear that claimant made any effort to obtain employment after he learned that he had silicosis. In neither case does the record contain evidence from which the Commission could reasonably infer that claimant was unable to market his remaining capacity for work. In this case, though the evidence bearing upon Fletcher's efforts to secure other employment that he could perform is not what might be desired, yet it shows that he was willing to accept other employment and did make an effort to work outside the mine but was unable to perform that work.

The Commission having found that because of his partial physical disability claimant was unable to market his remaining capacity for work, and there being credible evidence to sustain that finding, it will not be disturbed. The award is affirmed.

*Affirmed.*