## Richmond

## Vega Precision Laboratories, Inc., et al. v. Hamza Jwayyed

April 21, 1978.

Record No. 770817.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Joseph Dyer (Siciliano, Ellis, Sheridan & Dyer,* on brief) for appellants.

*Lawrence J. Pascal* for appellee.

COCHRAN, J., delivered the opinion of the Court.

Hamza Jwayyed, an accountant employed by Vega Precision Laboratories, Inc. (Vega), was injured in the course of his employment on April 4, 1975, when several accounting binders which he was lifting from a shelf fell and struck him in the right shoulder, resulting in a cervical sprain and low back sprain. Jwayyed continued to work intermittently without loss of wages until he was discharged, effective June 6, 1975. Pursuant to a memorandum of agreement and an award of the Industrial Commission, dated July 21, 1975, he was paid $91 per week for total incapacity until November 7, 1976, when Vega filed an application to terminate compensation on the ground that Jwayyed's condition had changed and he had recovered sufficiently to return to his regular employment.

At a hearing conducted by Deputy Commissioner Hiner, uncontradicted medical evidence was introduced showing that Jwayyed could return to work as a cost accountant to perform duties specified in a job description dated October, 1976.[1]

---

[1] The job description is as follows:

"JOB TITLE: Cost Accountant

"JOB SUMMARY: Under the direction of the Manager of the Accounting Department, responsible for performing cost/price analysis on Vega proposals and contracts and for the generation of related reprints, reports and data for utilization by Vega management.

"SPECIFIC DUTIES: Assist in the pricing of all proposals and prepare analysis if indicated.

Monitor cost incurred data against original estimates and revised cost to complete figures on selected contracts.

Develop format in which to provide the results of such analysis to management.

Develop data bases on cost of standard end products.

Utilizing data base develop standards to compare costs on the same or similar end products.

Analyze bids at completion of contractual committment [sic] and advise management of bid-actual variances."

supplied by Vega to the examining physician. Jwayyed testified, however, that the job description did not accurately reflect his duties, as he was employed to supervise the installation of a cost accounting system, and this work demanded greater physical exertion and heavier lifting on his part than did the work delineated in the job description. Vega's counsel, claiming surprise, asked permission to take the deposition of Jwayyed's employer to establish his duties as a cost accountant, but this motion was denied, Deputy Commissioner Hiner observing that he could not see, in view of Jwayyed's qualifications, "that he couldn't qualify as a cost accountant." Jwayyed had testified that he had B.A. and M.B.A. degrees in business, accounting, and finance. Deputy Commissioner Hiner subsequently ruled that Vega had failed to prove by a preponderance of the evidence that the claimant was able to return to his pre-injury work, and that the claimant's testimony as to the physical activity required of him in such work was unrebutted.

Vega filed a Petition to Reopen and Take Additional Testimony for the purpose of verifying the accuracy of the job description as applied to Jwayyed's duties. Attached to the Petition was an affidavit executed by the officer of Vega for whom Jwayyed had worked.

Upon review, the full Commission in its opinion filed May 16, 1977, made the following finding:

"On the basis of the record, we find that this employee could resume the duties of a cost accountant as outlined in a job description supplied to the physicians by the employer. However, this employee was terminated as of June 5, 1976 [sic] and employment as a cost accountant is not available to him. He continues to suffer residual disability which prevents him from obtaining employment which would require more strenuous duties than that of a cost accountant; therefore, he continues to suffer a total loss of wage."

The Petition to Reopen and Take Additional Testimony was denied, the opinion stating that evidence as to the work duties performed by Jwayyed for Vega "could not in any way affect his right to continue to receive compensation benefits under the Virginia Workmen's Compensation Law." The award of the Hearing Commissioner ordering the resumption of payments to Jwayyed was sustained.

On appeal, Vega argues that the Commission found as a fact that the employee was physically able to resume his pre-injury employment and that, contrary to the ruling of the Commission on the applicable law, Jwayyed is not entitled to continued compensation benefits for total loss of wages when his former job has been eliminated. Jwayyed maintains, however, that Vega has failed to prove that he is able to resume his pre-injury employment, that the medical evidence merely shows him able to perform selective work, that compensation benefits may be denied only if it is shown that Jwayyed is unwilling to perform such selective work, as provided in Code § 65.1-63,[2] and that in the absence of such evidence and in view of Vega's failure to proffer such employment, he is entitled to full compensation under Code § 65.1-54. In summary, it is Jwayyed's position that he was employed as a cost manager with more strenuous duties than those of a cost accountant, that his work-related accident incapacitated him from performing that work, that he can now perform the less strenuous work of a cost accountant, but this selective employment has not been proffered to him by Vega, and he is therefore still entitled to full compensation.

It appears from his opinion that Deputy Commissioner Hiner agreed with Jwayyed, based upon Jwayyed's testimony, the medical evidence, and the employer's termination letter of June 5, 1975, addressed to the employee. The Deputy Commissioner was of opinion that the job description of October 5, 1976, supplied to the physicians, was "at best . . . an inadequate description of a job which could be construed as selective . . . ."

The opinion of the full Commission does not expressly approve or reject this view of the Deputy Commissioner, which is the pivotal issue in the case. The Commission found from the record that Jwayyed could resume the duties of a cost accountant as outlined in the job description of October 5, 1976. But the Commission did not find that this job description incorrectly stated the duties required of Jwayyed. Indeed, the Commission's stated reason for its denial of Vega's Petition to reopen the case to take additional evidence as to the work duties performed by

---

[2] "§ 65.1-63. Refusal of employment. — If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified."

Jwayyed strongly suggests that the Commission concluded that the job description furnished the physicians did in fact accurately describe Jwayyed's work requirements. Otherwise, we do not believe that the Commission would have stated that such evidence could not in any way affect the employee's right to continued compensation. If the evidence already in the record showed that the job description was correct, then any additional evidence would have been merely cumulative, unnecessary, and ineffective. On the other hand, if the evidence already in the record tended to show that the job description was incorrect, then the additional evidence proffered to establish the accuracy of the job description would have been material and relevant and might have conclusively established that the employee was no longer entitled to compensation.

The conclusion that the job description matched Jwayyed's work is supported by the evidence in the record. The newspaper advertisement which led to Jwayyed's employment in September, 1974, states in pertinent part as follows:

## "ACCOUNTANT

"We are currently staffing a new cost/pricing section in our accounting department & offer an excellent career opportunity for an individual with a minimum of 1 year cost accounting experience preferably in the field of manufacturing. Responsibilities include cost data development, analysis & reporting.
". . . ."

In the Employer's First Report of Accident, dated April 14, 1975, which stated that Jwayyed had not been disabled and had returned to work without loss of wages, the employee's occupation was described as that of cost accountant regularly employed in the Accounting Department of Vega. At that time, when no claim had been filed, and there was no reason to expect that the employee would be disabled, Vega had no motive to misstate his status.

The letter dated June 5, 1975, terminating Jwayyed's services, effective the next day, before any claim for disability had been filed by the employee, also supports the view that Jwayyed was employed as a cost accountant. It stated in pertinent part:

" . . . as you know from previous discussions you have had with Mr. Evans and me, when you were hired we felt that Vega was ready to centralize all Cost Accounting functions and form a new componant [sic] within our Accounting Department. Time has proven that we were not ready to implement this concept and as a result we have been unable to provide you with a realistic workload of meaningful tasks that are commensurate with your academic background and training.

"On behalf of Mr. Evans and myself I want to thank you for help you provided us during the period that you were on the staff of our Accounting Department and to wish you every success in your future career pursuits . . . ."

Determination whether an employee is working as a cost accountant can hardly turn upon the number of books, ledgers, and manuals which the employee uses. Doubtless the Commission realized that every cost accountant, even one performing largely clerical tasks, may be required in discharging his duties to lift and carry records of varying kinds and weights. So we construe the opinion of the Commission to constitute a tacit approval of the job description furnished the physicians as an accurate statement of the duties required by Jwayyed. Hence, the issue of selective employment, not mentioned in the opinion, is eliminated from the case.

The Commission found from the medical evidence that Jwayyed could return to work as a cost accountant, but that he could not perform more strenuous work than that of a cost accountant. This finding, based upon credible evidence, is binding upon us. *Shawley* v. *Shea-Ball,* 216 Va. 442, 444, 219 S.E.2d 849, 851 (1975). Indeed, in the present case, there is unanimity of opinion among the physicians. Jwayyed had a lengthy history of physical ailments before and after the accident at Vega. A few months before the accident he had undergone an operation for the removal of a kidney stone which had resulted in his absence from work for approximately a month. Since 1972 he had undergone five or more operations for rectal abscesses. His attending physician had sought to determine, by means of a lumbar myelogram, whether a ruptured disc in his spine was causing his complaints of pain in his lower back, but this exploratory procedure could not be

followed because of Jwayyed's alleged allergy to iodine. At the time of the hearing, the Deputy Commissioner found from the record that Jwayyed was suffering from medical problems stemming from "a probable acid active peptic disease" unrelated to the accident. Jwayyed testified that he was still totally incapacitated by the accident and since then had done no work of any kind, although he had applied unsuccessfully in 1975 to "a friend", to whom he showed his medical reports indicating total disability, for a job as comptroller or cost manager. But the physicians agreed that Jwayyed was able to return to his work as set forth in the job description.

Applying the law to the facts, the Commission ruled that Jwayyed was entitled to continued compensation under the Workmen's Compensation Act. We do not agree.

The employee has been found medically fit to return to his pre-injury employment as a cost accountant, but the job is no longer available at Vega. Under these facts, the Commission misapplied the law in its ruling. In *Jones Construction Co.* v. *Martin*, 198 Va. 370, 94 S.E.2d 202 (1956), we reversed the Commission's ruling that termination of employment of the injured employee because of a reduction in force constitutes a change in condition which warrants a review of a previous award of compensation. We pointed out that, although we have repeatedly held that the provisions of the Workmen's Compensation Act are to be liberally construed, the Commission's ruling would engraft upon the Act a provision for unemployment insurance which could not be sustained. In the present case, Jwayyed's job was discontinued. He is no longer entitled to compensation for disability when he is able to return to his pre-injury work, albeit not for his former employer.

Accordingly, we will reverse the ruling of the Industrial Commission and enter final judgment for the appellants.

*Reversed and final judgment.*