UPON A REHEARING EN BANC
RUSSELL, Judge.
King William County and its insurer (“employer”) appealed the Commission’s award of disability benefits to the claimant, Linda Jones, asserting multiple assignments of error. In a unanimous opinion, a three-judge panel of this Court *537 affirmed the Commission regarding certain of its factual findings. King William County v. Jones, 65 Va.App. 536, 544-50, 779 S.E.2d 213, 217-20 (2015).[1] The panel, however, reversed the award of disability benefits, holding that claimant failed to establish that she was entitled to benefits because “the record does not support the conclusion that claimant’s inability to obtain employment after being laid off was causally related to her partial disability ...” Id. at 556, 779 S.E.2d at 223.
Claimant sought en banc review, arguing in part that the panel decision “unfairly held that [claimant] did not prove that her unsuccessful search for work was due to her injury .... ” Claimant also asserts that the panel decision was inconsistent with the prior decisions of this Court in Carr v. Atkinson/Clark/Shea, A Joint Venture, 63 Va.App. 281, 756 S.E.2d 191 (2014), and Utility Trailer Mfg. Co. v. Testerman, 58 Va.App. 474, 711 S.E.2d 232 (2011). Although, as will be discussed below, we find that the panel opinion is consistent with both Carr and Utility Trailer, we recognize that those cases are in conflict with our prior decisions in Metro Mach. Corp. v. Lamb, 33 Va.App. 187, 532 S.E.2d 337 (2000), and Metro Mach. Corp. v. Sowers, 33 Va.App. 197, 532 S.E.2d 341 (2000).[2] We granted rehearing en banc to resolve the conflict.
*538 BACKGROUND
Even before reaching this Court, claimant’s quest for benefits had an extensive and procedurally complex history, requiring multiple hearings before a deputy commissioner and resulting in two separate review opinions from the full Commission. Because the underlying factual and procedural history is fully set forth in the panel opinion, Jones, 65 Va.App. at 539-43, 779 S.E.2d at 215-17, we restate only the facts that are necessary to understand the issue before us.
Claimant worked as a part of employer’s custodial staff for a number of years. On April 13, 2011, claimant fell from a ten-foot ladder while she was, as part of her duties, cleaning a window in the courthouse lobby. She suffered multiple injuries, and there is no dispute that the injuries arose out of and in the course of her employment. Despite her partial disability, she returned to work for her employer and worked in a light-duty capacity until June 30, 2011, when her work for employer ended.
Claimant’s tenure with employer ended not because of her injury, but rather, because, prior to claimant’s accident, employer decided to outsource its custodial needs. Specifically, it decided to eliminate all custodial positions and entered into a contract with a private entity, Jani-King, to provide the custodial services. Jani-King’s services under the contract did not commence until July 1, 2011. During the interval between the decision to eliminate the custodial positions and the commencement of Jani-King’s services pursuant to the contract, *539 the existing members of employer’s custodial staff, including claimant, continued to work in their respective positions.
Initially, none of employer’s custodians were hired by Jani-King when it began performing its duties under the contract. Approximately one year after Jani-King began providing custodial services for employer, one of employer’s former custodians was hired by Jani-King. Claimant never sought a position with Jani-King.
After her employment with employer ended, claimant unsuccessfully sought jobs in the area in which she lived. Although claimant’s testimony established that she applied for jobs with various employers, there was no evidence that she was not hired because of her partial disability. In fact, there is no evidence that the prospective employers were even aware that claimant was under any medical restrictions.
The deputy commissioner denied claimant’s application for benefits for multiple reasons, including a conclusion that the claim was barred by the economic loss rule because there was no causal connection linking claimant’s lost wages to her injury. The full Commission reversed. The Commission determined that, because “the claimant was laid off from her selective employment job, she was entitled to continuing disability benefits[,]” and, citing Utility Trailer, found that “[w]ages were lost and there was a causal connection between the wage loss and the claimant’s injuries.” Accordingly, the Commission awarded claimant benefits.[3]
Employer appealed to this Court, presenting multiple assignments of error. Of significance here, one of employer’s assignments of error was that “[t]he Workers’ Compensation Commission erred in its reversal of the [d]eputy [cjommissioner’s determination that the claimant’s lost time was barred by the economic loss rule.” Although the Commission’s opinion asserted that there was a causal relationship between claim *540 ant’s economic loss and her injuries, the panel of this Court noted that the Commission “cited no evidence to support its conclusion^] ... [and] the record ... is devoid of such evidence.” Jones, 65 Va.App. at 555, 779 S.E.2d at 222. Accordingly, the panel reversed.
Claimant sought rehearing en banc regarding the panel’s resolution of the economic loss rule issue. This Court granted the motion for rehearing en banc on the question of whether the record supported a conclusion that claimant had suffered an economic loss as a result of her work-related injuries. For the reasons that follow, we hold that the record does not support such a conclusion and reverse the Commission’s award of benefits.
ANALYSIS
I. Standard of Review
Employer contends that its responsibility to pay disability benefits to claimant ended when employer eliminated all of the custodial positions. Employer reasons that the loss of claimant’s position was not caused by her partial disability, and therefore, she is not entitled to continued benefits. Claimant counters that employer is required to continue to pay her disability benefits because she remains partially disabled, and therefore, is at a disadvantage in the marketplace.
We review whether the elimination of positions terminates an employer’s responsibility to pay continuing benefits to a partially disabled worker de novo. Carr, 63 Va.App. at 283, 756 S.E.2d at 192. In conducting our review, we are mindful that “the provisions of the [Workers’] Compensation Act are to be liberally construed,” but recognize that it was not intended to serve as a substitute for “unemployment insurance.” Vega Precision Labs., Inc. v. Jwayyed, 218 Va. 1026, 1032, 243 S.E.2d 228, 231 (1978). Finally, we review the evidence in the light most favorable to the claimant because she prevailed below and will reverse a factual finding of the Commission only if it is not supported by credible evidence in *541 the record. VFP, Inc. v. Shepherd, 39 Va.App. 289, 292, 572 S.E.2d 510, 511-12 (2002).
II. Partial Versus Total Disability
It is important to recognize that, having returned to a light-duty position, claimant was only partially disabled as opposed to totally disabled. This is a significant distinction. McKellar v. Northrop Grumman Shipbuilding, Inc., 290 Va. 349, 357, 777 S.E.2d 857, 861 (2015) (contrasting the different standards for claims of total disability under Code § 65.2-500 and claims of partial disability under Code § 65.2-502).
The standard in cases involving total disability is whether the injury caused a loss of earning capacity. As stated by the Supreme Court in McKellar, “an injured worker’s status in the labor market is irrelevant where the worker’s incapacity is total ... [, and thus,] the loss of earning capacity test is the proper standard for awarding compensation in cases of total incapacity under Code § 65.2-500.” Id. (emphasis added). In contrast, partial disability cases are not analyzed under the loss of earning capacity rubric, but rather, “Code § 65.2-502 presumes that where an injured worker is only partially disabled, that employee can continue working either on restricted duty or in an altogether new job. As a result, economic loss is the appropriate test for the compensation award in cases of partial incapacity ....” Id. (emphasis added).
The difference between loss of earning capacity and economic loss is more than mere semantics. A loss of earning capacity can be established at a high level of abstraction because “a[ totally] injured worker’s status in the labor market is irrelevant.” Id. An economic loss analysis is far more granular, requiring proof that a claimant suffered an actual economic loss in the labor market and did not merely lose the theoretical capacity to perform abstract job functions.[4]
*542 In a typical case of partial disability, the fact that a claimant’s employment is terminated while on partial disability often may provide evidence of an economic loss. For example, if a partially disabled claimant cannot return to pre-injury employment with the employer even though her position continues to exist and the employer offers no selective employment consistent with the claimant’s restrictions, a claimant has produced some evidence that she has suffered an economic loss as a result of her injury — but for her work-related injury, she would still be in her pre-injury position.[5]
III. Entitlement to Benefits in the Face of Layoffs and Furloughs
The equation is different, however, when, as here, the claimant’s employment with employer comes to an end because her position is eliminated along with the positions of her able-bodied colleagues. In such cases, although a claimant will have lost wages, evidence is required to establish that the loss *543 of wages was caused by, or was in any way related to, her injury.
Professor Larson has summarized the general rule as follows: “Loss of employment should not be deemed due to disability if a worker without the disability would lose employment or suffer a reduction in earnings under the same economic conditions ....” 7 Lex K. Larson, Larson’s Workers’ Compensation Law § 84.03 (Matthew Bender, rev. ed. 2015). Having stated the general rule, Larson recognizes that it is simple to state, but difficult to implement, noting that “whether this formula can be applied with any precision may be open to question.” Id. The inconsistencies in our prior cases amply demonstrate this difficulty.
A. The Metro Machine Cases
In Lamb, a claimant who was under medical restrictions caused by a prior, compensable accident sought wage benefits when he, along with other employees, was laid off “from selective employment, due to the employer’s loss of Navy ship repair work” and resultant “plant shut down.” 33 Va.App. at 196, 532 S.E.2d at 341. We affirmed the Commission’s award of benefits. Reasoning that “[u]ntil the employee can perform at his pre-injury capacity, he is protected from the economic vicissitudes of the market place,” we concluded that an “employee’s layoff due to the employer’s economic downturn does not preclude his entitlement to disability benefits.” Id. at 197, 532 S.E.2d at 341.
Similarly, in Sowers, we affirmed the Commission’s award of benefits to a partially disabled worker who was subject to a layoff, focusing on the injury’s effect on the worker’s earning capacity in the abstract and noting that he was entitled to benefits because he “did not have the same opportunity or ability as other employees to find other employment.” 33 Va.App. at 209, 532 S.E.2d at 347. See also Consol. Stores Corp. v. Graham, 25 Va.App. 133, 137, 486 S.E.2d 576, 578 (1997) (“[T]he employer’s financial condition and the availability of alternative work do not affect the claimant’s right to *544 compensation due to an impaired capacity to perform his pre-injury duties.”).
B. Utility Trailer and Carr
We returned to the issue in Utility Trailer. In Utility Trailer, the claimant had been involved in a compensable accident working on a manufacturing line in 2006 and had returned to work for the employer on the manufacturing line in a light-duty capacity. In 2009, in order to perform an inventory, employer furloughed all employees, including the claimant, for four days. The claimant sought wage benefits for the four days of work he missed as a result of the furlough. 58 Va.App. at 475-76, 711 S.E.2d at 232-33. The employer argued that the claimant was not entitled to benefits because any wages lost during the furlough were not caused by his partial disability, but rather, such loss was caused by the furlough of all of the manufacturing line employees. A divided Commission found for the claimant and awarded benefits.
We reversed. While acknowledging that a claimant limited to light-duty status could be entitled to benefits under such scenarios, we held that he must establish that his partial disability placed him at a disadvantage when compared to non-restricted workers and show that there was a “causal relationship between his loss of wages and his injury.” Id. at 482, 711 S.E.2d at 236. We concluded by holding that “[i]ndeed, the language of Code § 65.2-502 (‘when the incapacity for work resulting from the injury is partial ....’) admits of no interpretation but that a causal relationship is required.” Id. at 483, 711 S.E.2d at 236 (citations omitted). Finding that the claimant had failed to meet these requirements, we reversed the Commission’s award of benefits.
Next, in Carr, citing Utility Trailer with approval, we upheld an award of benefits to a partially disabled worker who was subject to a furlough, but reiterated the established principle that a partially disabled claimant seeking disability benefits in this scenario has the burden of demonstrating that “the wage loss is causally related to the partial incapacity.” *545 Carr, 63 Va.App. at 285-86, 756 S.E.2d at 193.[6] Cf. Pocahontas Fuel Co. v. Agee, 201 Va. 678, 681, 112 S.E.2d 835, 837 (1960) (holding that granting disability benefits to a worker who has been laid off is “warranted if the Commission could reasonably find ... that because of his disability he was unable to market his remaining capacity for work” (emphasis added)); Pocahontas Fuel Co. v. Barbour, 201 Va. 682, 684, 112 S.E.2d 904, 906 (1960) (stating that “[o]ne who has suffered a partial physical disability may obtain total incapacity payments if, because of his disability, he is unable to market his remaining capacity for work” (emphasis added)).
C. Resolving the Inconsistency
Thus, in the Utility Trailer and Carr line of cases, we have held that a claimant bears the burden of establishing a causal link between the work-related partial disability and the claimed economic loss. In contrast, the Metro Machine line of cases did not require such proof, allowing the mere fact of disability and an unrelated loss of position to establish an entitlement to benefits.
Despite our best efforts to harmonize both lines of cases, we now recognize that they simply cannot be reconciled. For the *546 reasons that follow, today we affirm the Utility Trailer framework and overrule the Metro Machine line of cases.[7]
We do so for a number of reasons. As noted above, cases consistent with the rationale of the Metro Machine line of cases erroneously have evaluated partial disability claims using a loss of earning capacity analysis. See, e.g., Lamb, 33 Va.App. at 197, 532 S.E.2d at 341 (reasoning that “[u]ntil the employee can perform at his pre-injury capacity” he is entitled to benefits (emphasis added)); Sowers, 33 Va.App. at 209, 532 S.E.2d at 347 (focusing on the injury’s effect on the worker’s earning capacity in the abstract and noting that he was entitled to benefits because he “did not have the same opportunity or ability as other employees to find other employment”); Graham, 25 Va.App. at 137, 486 S.E.2d at 578 (holding that “the employer’s financial condition and the availability of alternative work do not affect the claimant’s right to compensation due to an impaired capacity to perform his pre-injury duties” (emphasis added)). In McKellar, the Supreme Court made clear that this is the incorrect analysis because “economic loss is the appropriate test for the compensation award in cases of partial incapacity .... ” 290 Va. at 357, 777 S.E.2d at 861.
By contrast, we analyzed the claim in Utility Trailer under the economic loss test, focusing on whether the claimant had established that his partial disability placed him at a disadvantage when compared to non-restricted workers and had been able to show that there was a “causal relationship between his loss of wages and his injury.” 58 Va.App. at 482, 711 S.E.2d at 236. Similarly, in Carr, our analysis required the claimant to *547 establish that “the wage loss is causally related to the partial incapacity.” Carr, 63 Va.App. at 286, 756 S.E.2d at 193. Thus, consistent with the Supreme Court’s decision in McKellar, both Utility Trailer and Carr apphed the correct test, while the Metro Machine hne of cases did not.[8]
Our conclusion also comports with the basic notion that “[a] claimant still has the burden of proving [her] entitlement to benefits .... ” Ford Motor Co. v. Favinger, 275 Va. 83, 89, 654 S.E.2d 575, 578 (2008) (internal quotation marks and citation omitted). Adopting the rationale of the Metro Machine hne of cases would eliminate the requirement that a claimant demonstrate that partial disability caused an economic loss, place a partially disabled claimant in a superior position to the able-bodied workers who also were laid off, and essentially convert workers’ compensation benefits into unemployment benefits, which we cannot do. See Jwayyed, 218 Va. at 1032, 243 S.E.2d at 231; see Agee, 201 Va. at 681, 112 S.E.2d at 838; Barbour, 201 Va. at 684-85, 112 S.E.2d at 906.
IV. Application of the Utility Trailer Framework
To analyze whether a particular wage loss in such a scenario was due to the claimant’s partial incapacity, Utility Trailer considered five factors. Carr succinctly summarized the five considerations as follows:
(1) the length of any furlough from work; (2) whether that furlough included all employees, restricted or not, of the same class; (3) the reason for the furlough; (4) whether the term of the furlough was pre-determined by the employer; and (5) whether employees were offered employment at the termination of the furlough.
Carr, 63 Va.App. at 286, 756 S.E.2d at 193 (citation omitted).
We acknowledge that, by its express terms, Utility Trailer “addresses only those cases where a partially incapaei- *548 tated employee is furloughed.” 58 Va.App. at 483, 711 S.E.2d at 236. In context, the significance of the adverse employment action being a furlough was that it applied to an entire class of workers, regardless of disability status, and not to individually selected workers. Because the termination of the custodial positions also applied to an entire class of employees regardless of disability status, the reasoning and rationale of Utility Trailer applies with at least equal force here.
To conclude otherwise would create impermissible and anomalous results.[9] If, unlike a furloughed worker, a partially disabled worker who is laid off for reasons other than her work-related disability is entitled, subject only to a marketing requirement, to disability benefits during a period of unemployment, the Workers’ Compensation Act becomes, in both fact and effect, nothing more than another form of unemployment insurance. The Act was not designed as an alternative unemployment compensation system, and the Supreme Court expressly has rejected constructions of the Act that “would engraft upon the Act a provision for unemployment insurance ....” Jwayyed, 218 Va. at 1032, 243 S.E.2d at 231.[10]
Furthermore, such a result leads to anomalous results in that it would place injured employees in a superior position to their able-bodied colleagues and effectively eliminate the requirement that the partially disabled worker demonstrate a *549 causal relationship between her injury and the claimed economic loss. Nothing in the Act or controlling precedent suggests, let alone dictates, such anomalous results.[11] Accordingly, we will apply the Utility Trailer framework to claimant’s situation.
Here, the length of the layoff was definite; employer had eliminated permanently the custodial positions, and thus, claimant’s potential marketing activities were not affected by her possible recall to work, distinguishing her from the claimant in Carr. All of the custodial positions were terminated with all employees of claimant’s class losing their jobs regardless of whether or not they were subject to injury-related restrictions.
The layoff was the result of a business decision made by the employer. Although we can presume that it was done for economic benefit, there is nothing in the record to support a conclusion that the decision was made as a result of a general economic downturn. Because employer intended to eliminate the custodial positions permanently, the layoff and its length were predetermined.
Finally, no employees, whether subject to medical restrictions or not, were offered custodial positions with employer going forward. The record reveals that only one of employer’s former custodians eventually was hired by Jani-King, but that occurred a year after Jani-King had undertaken providing the custodial services. Claimant never applied for a position with Jani-King.[12]
*550 Our review of these considerations and the evidence leads inexorably to the conclusion that claimant’s partial disability did not cause the loss of wages associated with the end of her tenure with employer. The evidence is clear that the decision to terminate the custodial positions was made prior to claimant’s work accident; therefore, it can be said to a certainty that her partial disability did not cause the termination of her position or the positions of the uninjured custodians who also were laid off.[13] However, this is not necessarily disposi-tive. Claimant would be entitled to disability benefits if the evidence demonstrated that she was denied or lost other employment because of her partial incapacity. Agee, 201 Va. at 681, 112 S.E.2d at 838; Island Creek Coal Co. v. Fletcher, 201 Va. 645, 648, 112 S.E.2d 833, 835 (1960).
The Commission, citing Utility Trailer, found that “[wjages were lost and there was a causal connection between the wage loss and the claimant’s injuries.” The Commission, however, cited no evidence to support its conclusion. Our review of the record reveals that it is devoid of such evidence.
Although there is evidence that claimant unsuccessfully sought employment with numerous potential employers after being laid off by employer, there is no evidence that she was unsuccessful because of her partial disability. Claimant’s testimony established that she applied for jobs at various employers; however, there was no evidence suggesting that her injuries rendered her unfit to perform the positions she sought or that she was not hired because of her partial disability, a showing that is essential to her claim. Agee, 201 Va. at 681, 112 S.E.2d at 837-38; Barbour, 201 Va. at 684-85, 112 S.E.2d at *551 906-07. In fact, there is no evidence that the prospective employers were even aware that claimant was under any medical restrictions, making her situation materially indistinguishable from the claimant in Agee.[14] As the Supreme Court held in that case,
the evidence shows that when [the claimant] was laid off and applied at other mines operated by the company, neither he nor the company knew that he had silicosis. Employment was denied him in each instance, not because of his disease but because he was not on the panel at those mines.
Agee, 201 Va. at 681, 112 S.E.2d at 838. Because claimant’s relevant circumstances as revealed by the record are materially indistinguishable from the claimant in Agee, she has not established an entitlement to benefits.
The Commission erred in this case by simply assuming that a failure to find work when partially disabled is enough to establish a causal relationship. It is not. As the Supreme Court held in Agee, where the claimant had a disability rating of 50%, “[n]o inference is warranted from the degree of partial physical incapacity of [the claimant] that he could not obtain other employment, and the evidence is insufficient to show that he made reasonable effort to obtain other employment which was denied to him because of his partial physical incapacity.” [15] 201 Va. at 681, 112 S.E.2d at 838 *552 (emphasis added). Accordingly, we reverse the Commission’s award of disability benefits to claimant.[16]
In reaching this conclusion, we note that our holding is based on the unremarkable proposition that a partially disabled claimant bears the burden of establishing a causal link between a claimed economic loss and the work-related injury. This is the clear implication of the Supreme Court’s decision in McKellar.[17] The evidence established that claimant was laid-off for reasons unrelated to her work-related injury, and claimant offered no evidence to establish that her inability to find other employment was in any way related to her injury. Accordingly, she failed to establish that she was entitled to disability benefits.[18]
*553 CONCLUSION
The essence of the workers’ compensation system is that an employee who suffers a loss as a result of a work-related injury and resultant disability is entitled to compensation. The Act was not intended to and does not provide benefits for losses that are wholly unrelated to a workplace injury. For the foregoing reasons, we find that the record does not support the conclusion that claimant’s partial disability caused her to suffer an economic loss, and therefore, we reverse the Commission’s award of disability benefits.

Reversed.

. Appellants did not seek en banc consideration of these issues. "[T]he grant of en banc review stays a panel decision pending review of those issues for which rehearing en banc has been granted but does not vacate it ...." Accordingly, "we address only the issues raised in [the] petition for rehearing en banc and reinstate the panel’s decisions regarding the [other] issues.” Holt v. Commonwealth, 66 Va.App. 199, 208, 783 S.E.2d 546, 550 (2016) (en banc); see also Rule 5A:35. Thus, for determination of the issue before us, it is established that claimant suffered work-related injuries, was partially disabled/in a light-duty status when her employment with employer ended, and did not knowingly violate a safety rule in the accident that led to her injuries. Jones, 65 Va.App. at 547-50, 779 S.E.2d at 219-20. The issue of whether the economic loss test precluded the Commission's award of disability benefits is fully before us.

. The panel opinion expressly noted the tension between the Metro Machine line of cases and Utility Trailer, but noted that "in Carr, 63 Va.App. at 285-86, 756 S.E.2d at 192-93, we cited both with approval, effectively concluding that they could be reconciled .... ” Jones, 65 Va.App. at 552, 779 S.E.2d at 221. The panel opinion went on to note *538 that, "[s]ubsequent to Carr, we expressly recognized that Carr harmonized the decisions in Utility Trailer and [Metro Machine]." Id. at 552 n.10, 779 S.E.2d at 221 n.10 (citing McKellar v. Northrop Grumman Shipbuilding, Inc., 63 Va.App. 448, 455 n.3, 758 S.E.2d 104, 107 n.3 (2014), rev’d on other grounds, 290 Va. 349, 777 S.E.2d 857 (2015)). Accordingly, the panel was required to treat the two lines of cases as reconciled, but, because we are now sitting en banc, we are not so required. Startin v. Commonwealth, 56 Va.App. 26, 39 n.3, 690 S.E.2d 310, 316 n.3 (2010) (en banc) (noting that published panel opinions of the Court of Appeals "bind all other three-judge panels under the interpanel accord doctrine ...; [however,] they do not bind the Court sitting en banc").

. The Commission entered an award of $234.41 per week for disability benefits beginning July 1, 2011, and reasonable and necessary medical benefits for the injuries to claimant’s neck, back, left shoulder, ribs, and hands.

. The dissent posits that, despite the language quoted above, the Supreme Court in McKellar was not setting forth the appropriate tests for *542 analyzing claims of partial versus total disability, but rather, simply was engaged in an explanation of the "calculation of benefits.” Such a reading is inconsistent with the Supreme Court’s repeated references to economic loss and loss of earning capacity as tests or modes of analysis to be employed. See, e.g., McKellar, 290 Va. at 357-58, 777 S.E.2d at 861 (“Instead of applying the test for total incapacity as delineated by Code § 65.2-500, the court and Commission below improperly conflated the analyses for total incapacity and partial incapacity.” (emphasis added)). We do not believe the Supreme Court's word choice was the result of inadvertence. Accordingly, we give purpose and full effect to the words used. We also note that our conclusion that McKellar is fairly read as requiring that a partially disabled claimant establish a causal relationship between the work-related disability and the claimed economic loss is shared by the Virginia Trial Lawyers’ Association, which, in a brief amicus curiae filed on claimant’s behalf, noted that McKellar ”[p]resumably ... require[s] a partially disabled claimant to establish that their economic loss is attributed to their work related disability, not some other unrelated reason.”

. Such a showing does not, standing alone, entitle a claimant to benefits; she still would be under an obligation to market within her restrictions. See, e.g., Ford Motor Co. v. Favinger, 275 Va. 83, 89-90, 654 S.E.2d 575, 578-79 (2008); Lynchburg Gen. Hosp. v. Spinazzolo, 22 Va.App. 160, 168, 468 S.E.2d 146, 150 (1996); see also Code § 65.2-510.

. We acknowledge that, in attempting to reconcile the conflicting lines of cases, the panel in Carr not only cited Utility Trailer with approval, but also cited with approval both Lamb and Graham, going so far as to quote Lamb’s reference to a partially disabled employee being protected from the "vicissitudes of the market place.” Carr, 63 Va.App. at 286, 756 S.E.2d at 193 (quoting Lamb, 33 Va.App. at 197, 532 S.E.2d at 341). In quoting this language, however, the Carr majority did not adopt Lamb's rule of decision, which would have required it to address only two questions: (1) Was the claimant partially disabled?; and (2) Was the claimant subject to a furlough? If this were all that was required, Carr’s detailed discussion of the circumstances surrounding the furlough, its undefined duration, and its relative effect on able-bodied workers as opposed to partially disabled workers subject to the requirements of Code § 65.2-510 would have been rendered superfluous. See, 63 Va.App. at 286-87, 756 S.E.2d at 193-94. Because such a discussion is required by the Utility Trailer analysis, Carr, despite the citations to the Metro Machine line of cases, is best understood as applying the rule of decision from Utility Trailer.

. This includes Lamb, Sowers, Graham, and any other cases to the extent that they allow for the award of disability benefits to a partially disabled worker without requiring proof that the work-related injury caused the economic loss or otherwise analyze a claim for partial disability by considering loss of earning capacity as opposed to economic loss. Contrary to the dissent’s assertion, we do not overrule these cases because "they did not use the specific term 'economic loss;’ ” we overrule them because they employed an analytical framework for cases of partial incapacity that cannot be reconciled with the express language of the Supreme Court’s decision in McKellar.

. We also note that McKellar, in addition to making clear that the economic loss rule is the appropriate test in cases of partial disability, cites to our decision in Utility Trailer and does not suggest that it is incorrectly decided. McKellar, 290 Va. at 358, 777 S.E.2d at 862.

. Our recognition that the interpretation championed by the dissent leads to anomalous results is not, as the dissent suggests, our attempt to address questions of public policy. We agree with the dissent that the public policy of the Commonwealth is set by the General Assembly. Our disagreement is over what policy the General Assembly has set. Consistent with the Supreme Court’s decisions in McKellar and Agee, we reiterate our holding from Utility Trailer regarding the requirements of Code § 65.2-502: "Indeed, the language of Code § 65.2-502 ... admits of no interpretation but that a causal relationship is required." 58 Va.App. at 483, 711 S.E.2d at 236 (emphasis added) (citations omitted). The dissent concludes that no such causal relationship is required.

. The dissent agrees that the Act is neither designed nor intended to operate as a parallel unemployment compensation system. Given that the dissent's interpretation of the Act would, in both fact and effect, have the Act serve as such a parallel system in this case, we reject that interpretation.

. Despite quoting portions of the Act at some length, the dissent points to no language in the Act that actually dictates its conclusion or precludes the method of analysis set forth by the Supreme Court in McKellar, which we adopt here.

. It is noteworthy that claimant never applied for a position with Jani-King. Based on her own testimony, claimant essentially was performing all of the duties of a non-restricted custodian at the time Jani-King assumed the contract for providing custodial services. Claimant’s failure to apply leaves open the question of whether she essentially could have continued to provide the same custodial services she previously had provided, albeit as an employee of Jani-King.

. Given this undisputed fact, we disagree with the dissent’s characterization of the decision to outsource the positions as being part of an impermissible "bait and switch.” Because the decision regarding outsourcing the positions was made and known prior to claimant’s injury, it is logically impossible to conclude that the decision was made as part of a scheme to trick the yet-to-be injured claimant. There simply is no relationship, causative or otherwise, between the decision to outsource the positions and claimant’s injury. The scenario of an employer seeking to avoid paying disability benefits by terminating a class of workers that includes a worker or workers receiving benefits is not before us.

. Because Agee controls the outcome of the case in this regard, the dissent attempts to distinguish Agee. It does so not by engaging the words used by the Supreme Court in Agee, but rather, by discussing other cases that cite Agee. The other cases, however, do not address situations where, as here and in Agee, an employee lost employment for reasons wholly unrelated to the work-related injury. Additionally, the cases do not address the relevant language from Agee upon which we rely. Given the significant similarities between the facts of this case and Agee and the clarity of the language used by the Supreme Court in Agee regarding the relevant issue, we simply apply Agee as written.

. It is hard to imagine a more definitive statement that a claimant is required to establish a causal connection between her partial incapacity and a subsequent failure to find new employment. Given that the Supreme Court decided Agee in 1960, the dissent’s assertion that "never, until now, has a disabled employee additionally been required *552 to prove that her marketing was unsuccessful because she is disabled ...” is mistaken.

. The Commission’s award of medical benefits to claimant is not affected by this opinion.

. As an intermediate appellate court, "we are bound by the decisions of the Supreme Court of Virginia .... ” O’Malley v. Commonwealth, 66 Va.App. 296, 301, 785 S.E.2d 221, 224 (2016) (internal quotation marks and citations omitted). It is not our function to avoid or evade the clear implications of decisions of the Virginia Supreme Court by characterizing unambiguous statements as dicta or by simply ignoring those decisions that lead to results that are different from how we might decide an issue in the first instance. Our hierarchal system of courts and a need for stability in the law mandate that we apply decisions of the Supreme Court as they are written. To attempt to chart a different course less than a year after the Supreme Court decided McKellar is not only impermissible, it unnecessarily would confuse the issue for the Commission and the bar.

. Nothing in this opinion restricts the evidence a partially disabled claimant in such a scenario may offer to establish that a work-related injury prevented her from obtaining employment, and thus, caused an economic loss. Claimant argues that we now essentially require claimants to produce an express, written statement from potential employers that the employers did not hire the claimant because of her restrictions. Although such a written statement would likely establish the causal relationship, it is not the only means of proving that an economic loss was caused by the work-related injury. See, e.g., Island Creek Coal, 201 Va. at 648, 112 S.E.2d at 835 (holding that a claimant with a work-related partial disability, who obtained work with a new employer but had to quit the job because of the preexisting disability, was entitled to *553 disability benefits from the original employer because "he was willing to accept other employment and did make an effort to work outside the mine but was unable to perform that work”).
Contrary to the dissent, nothing in our opinion today requires any changes in the way partially disabled claimants market their residual capacity. Partially disabled claimants who lose their initial employment for reasons unrelated to their disability continue to have an obligation to seek out employment consistent with their capacities. If their attempts to find or keep employment are thwarted as a result of their disability, they are entitled to benefits. If their disability plays no role in their inability to find or keep a job, they are not. As noted throughout our opinion, such a view is not new, but rather, is consistent with decisions of the Supreme Court on this issue dating back more than a half-century. See Island Creek Coal, 201 Va. at 648, 112 S.E.2d at 835; Agee, 201 Va. at 681, 112 S.E.2d at 838; and Barbour, 201 Va. at 684-85, 112 S.E.2d at 906-07.