COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Ortiz and Lorish
Argued at Richmond, Virginia


TERRANCE M. UNDERWOOD

v.          Record No. 1502-22-2

VELOCITY CONSTRUCTION OF
  VIRGINIA, INC., ET AL.

MEMORANDUM OPINION* BY
JUDGE LISA M. LORISH
MARCH 5, 2024

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

W. Joseph Owen, III (Bennette H. Sharpe, IV; Owen & Owens PLC,
on briefs), for appellant.

A. Jacob Perkinson (Michael P. Del Bueno; Whitt Del Bueno Clark,
on brief), for appellees.


Terrance M. Underwood appeals a decision of the Workers' Compensation Commission

vacating his award of temporary total disability benefits.  He challenges the Commission's

findings that he was partially disabled rather than totally disabled, that he was not under an open

award, and that he was required to prove a new period of temporary total disability after the

termination of an award order.  Underwood also argues that the Commission erred in finding that

he needed to present evidence that he had marketed his residual work capacity.  In assignments

of cross-error, Velocity Construction of Virginia, Inc., contends that the Commission erred in

finding that it had not made a specific bona fide offer of light-duty employment to Underwood.

For the reasons set forth in this opinion, we affirm the Commission's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Underwood worked for Velocity for over two decades, beginning as a carpenter and eventually rising to the position of superintendent. He oversaw site construction management, which included payroll and physical labor.

In December 2020, while working for Velocity, he tried to help stand up a wall, but the wall crashed down on him. As a result, he suffered a broken back, a fractured pelvis, and a concussion. After a period of recovery, Underwood filed a claim for benefits in April 2021, requesting wage loss replacement for temporary total disability. A few weeks later, Velocity and Underwood signed a voluntary agreement form providing temporary total disability benefits to Underwood for his hip beginning January 4, 2021. In May 2021, the Commission approved the agreement and retroactively awarded Underwood temporary total disability and lifetime medical benefits for his hip beginning on the agreed upon date.

Meanwhile, in March 2021, Underwood's treating physician released him to return to light-duty work in a sedentary capacity with certain restrictions. At the same time, Velocity attempted to create a new position for Underwood with responsibilities that would evolve as Underwood recovered. The new position would be "safety supervisor," and its accompanying duties would be CPR and first aid training, forklift and aerial lift training, traveling to work sites, completing inspections, and conducting various administrative tasks, including paperwork and payroll. To prepare Underwood, Velocity created a computer-based training program for him to complete while he was restricted to sedentary work.

---

[1] "On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015) (quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (en banc)).

Underwood returned to work as the safety supervisor on April 5, 2021, at which time Velocity paid his full, pre-injury salary. Velocity required Underwood to email the number of hours worked per week and his progress with the program. His first training task was to complete a 30-hour, online OSHA training and pass a subsequent test on that training; Underwood failed the test three times but passed on his fourth attempt. He completed no other training.

Underwood sent his work hours to his supervisor three or four times, but eventually stopped communication. Underwood did not report issues or problems accessing the training and did not ask for help to access it.

Velocity's president terminated Underwood's employment on June 11, 2021. At the termination meeting, Underwood stated that "he didn't think he'd come back [to work] anyway." Velocity provided Underwood a severance package that included his regular pay through July 2, 2021.

On July 6, 2021, Velocity filed a request for a hearing, asking the Commission to suspend Underwood's benefits. Velocity alleged that Underwood had returned to light-duty work on April 5, 2021 and then refused selective employment within his physical capacity. Velocity also requested credit for temporary total disability overpayment between April 5, 2021 and April 12, 2021—the period that Underwood had returned to work and was receiving full wages. During that week, Underwood received both disability payments and wages.

At the hearing, Underwood admitted that he forgot to submit his hours and that he had been terminated. He testified that he did not refuse to do the training. Underwood stated that he did not know what job he was being trained for, but he assumed it was for an OSHA inspection position. As for his physical capacity, Underwood testified that he had been able to travel, drive long distances, and walk around at a park. He performed around 30 squats per day, went up and

- 3 -

down the staircases in his house, walked around a shopping mall, and took trash cans out to the road. A report from his physician, dated June 1, 2021, said it was "unlikely" Underwood would ever return to full-duty work but cleared him for several tasks, including sitting continuously, walking on flat surfaces, standing, kneeling, pushing, and pulling infrequently. He was also cleared to lift up to 20 pounds sometimes, as well as bend, kneel, squat, twist and turn, drive, type on a keyboard, and reach above his shoulder.

At the end of the hearing, the deputy commissioner found that Velocity did not make a specific job offer to Underwood because the nature of the work for the newly-created position remained uncertain. Accordingly, the deputy commissioner denied Velocity's request to suspend Underwood's benefits based on a refusal of selective employment. But the deputy commissioner terminated the prior award of temporary total disability benefits for Underwood effective April 5, 2021, because Underwood returned to work that day, and awarded Velocity a credit from April 5 to April 12. The deputy commissioner then held that "benefits pursuant to the [prior award] will be reinstated after the termination" of Underwood's employment on June 11, 2021.

Velocity sought review from the full Commission. The Commission affirmed that there was insufficient evidence that Velocity made a bona fide offer of selective employment to Underwood, and agreed Velocity was entitled to a credit for the week that Underwood returned to work. But the Commission found that the deputy commissioner erred by reinstating Underwood's temporary total disability benefits after his termination. Because the deputy commissioner concluded that the prior award of temporary total disability benefits was terminated effective April 5, 2021, and Underwood did not appeal this conclusion, the Commission found that the burden had shifted to Underwood to prove he was entitled to a new award of temporary total disability benefits beginning June 12, 2021. The Commission then found that Underwood had failed to meet that burden because he presented no evidence that he

- 4 -

had marketed his residual work capacity after his termination. As a result, the Commission vacated the post-termination reinstatement of the award of temporary total disability benefits. Underwood appeals.

ANALYSIS

Underwood argues that the Commission erred in affirming the deputy commissioner's termination of his temporary total disability award based on his physician's release for him to return to work, and his actual return to work, in April 2021. He asserts that his "attempt" to return to light-duty work was "not dispositive" in establishing that he was no longer totally disabled, because he "clearly evinced a total disability" based on evidence about his existing ailments before the deputy commissioner. Moreover, given the evidence of his continuing total disability, Underwood argues that the Commission erred in overturning the deputy commissioner's reinstatement of his prior award effective June 12, 2021, the day after termination. Here, Underwood argues that the deputy commissioner was not issuing a *new* award, for which he needed to bear the burden of proving his entitlement. Instead, he asks us to find that the deputy commissioner only functionally suspended the prior award for the time that Underwood returned to employment until he was terminated. As a result, it was Velocity who bore the burden to prove that the award was no longer warranted as of June 12, 2021.

Even if Underwood were correct that the deputy commissioner merely suspended the prior award for the time period that Underwood returned to work until his termination and that Velocity bore the burden to prove that Underwood had a change in condition such that he was no longer entitled to the prior award of total temporary disability as of June 12, 2021, we find that the result would be the same, because the Commission had credible evidence to support its conclusion.

In reviewing a decision from the Commission, we are bound by the Commission's factual findings as long as "'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83-84 (2015) (en banc) (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). In contrast, "the [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 430 (2007)).

After terminating Underwood, Velocity filed a request for the Commission to terminate the total temporary disability benefits based on a change in Underwood's condition. Velocity argued that termination was justified based on Underwood's return to light-duty work on April 5, 2021 and his refusal of selective employment within his capacity. "[A] change of condition is not a new injury but is 'a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation.'" *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 57 (2018) (quoting Code § 65.2-101). The party asserting the change in condition bears the burden "to prove his allegations by a preponderance of the evidence." *Herbert Clements & Sons, Inc. v. Harris*, 52 Va. App. 447, 458 (2008) (quoting *Great Atl. & Pac. Tea Co. v. Bateman*, 4 Va. App. 459, 464 (1987)).

Where an injury causes "a loss of earning capacity," a worker is totally disabled. *King William County v. Jones*, 66 Va. App. 531, 541 (2016) (en banc). In contrast, a partially disabled worker is presumed to be able to "continue working either on restricted duty or in an altogether new job." *Id.* (quoting *McKellar v. Northrup Grumman Shipbuilding, Inc.*, 290 Va. 349, 357 (2015)). "[T]here is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time." *Hoffman v. Carter*, 50 Va. App. 199, 216 (2007) (quoting *Marshall Erdman & Assocs. v. Loehr*, 24 Va. App. 670, 679 (1997)).

Underwood argues that the deputy commissioner did not terminate the original disability award and create a "brand new award." Rather, the deputy commissioner "account[ed] for an interim period where Mr. Underwood was working." Thus, "[t]he reinstatement of Mr. Underwood's award was not the granting of a new award, but a reinstatement after suspension."

Assuming without deciding that Underwood is correct, we must determine whether there was credible evidence before the Commission to conclude that no further award was appropriate as of June 12, 2021—the day the "new" or "reinstated" award would have begun. Given this assumption, Velocity (as the moving party) bore the burden to prove a change in condition.

Underwood argues that the Commission relied entirely on his return to work and release by his physician to light-duty work as the support for a change in condition, which is improper under *Telesystems, Inc. v. Hill*, 12 Va. App. 466 (1991). As in this case, the claimant in *Telesystems* returned to light-duty work after receiving a prior award of temporary total disability benefits as a result of a work-related injury. *Id.* at 468. The employer sought to suspend the disability payments, which the Commission did, pending a hearing. *Id.* At the hearing, the employee argued that his medical condition had not changed, despite engaging in light-duty work. *Id.* at 468-69. "Neither party presented any testimonial evidence at the hearing." *Id.* at

- 7 -

469. The deputy commissioner agreed that the employer failed to meet its burden, and this Court upheld that decision on appeal. *Id.* at 472. We noted that the claimant's attempt and failure to return to light-duty work—without more—did "not require a reclassification of his disability from total to partial." *Id.*

Here, the Commission's finding that Underwood was no longer totally disabled, and was only partially disabled by the time he was terminated in June 2021, was supported by more than Underwood's return to light-duty work. In March 2021, Underwood's physician released him to return to light-duty work, restricted to sedentary tasks. It is undisputed that Underwood returned to light-duty work in April. Within two months, he had progressed enough that he was no longer medically limited to sedentary tasks. By June 1, 2021, medical records show Underwood was cleared to sit continuously, and to walk on flat surfaces, stand, kneel, push, and pull infrequently. Underwood was also cleared to lift up to 20 pounds occasionally, as well as bend, kneel, squat, twist and turn, and reach above his shoulder. He was also able to drive a car and type on a keyboard. He testified that he would travel, drive long distances, walk up and down the staircases in his house, and do around 30 squats a day. There was no lack of evidence to support Underwood's change in condition. *Cf. Telesystems*, 12 Va. App. at 472 (noting the "deficiency" of evidence where employer had only shown that "employee returned to work at some unknown wage during the course of his outstanding award").

Underwood argues that the Commission improperly shifted the burden to him to prove that he was entitled to a new period of temporary disability. He further argues the Commission erred when it determined he was partially disabled and therefore required to show that he made a "reasonable effort to market his remaining capacity to work." *Va. Wayside Furniture v. Burnette*, 17 Va. App. 74, 78 (1993) (citation omitted). The Commission reached this conclusion because it found that the deputy commissioner had terminated the original disability award,

which Underwood failed to appeal to the Commission. Regardless of whether the Commission was correct that the deputy commissioner had terminated the original award, or whether the original award was merely suspended, the Commission clearly considered all of the evidence presented. Indeed, the Commission specifically referenced the reports of the physicians who released Underwood to light-duty work in both March and June 2021 in its final report. Thus, the Commission's decision was supported by sufficient evidence—even assuming the burden remained with Velocity.

To sum up, even if Underwood is correct that the original award was never terminated, and instead was only suspended, the Commission's determination that Underwood was partially disabled by his date of termination is supported by credible evidence and therefore will not be disturbed on appeal. Code § 65.2-706(A).[2]

CONCLUSION

Accordingly, we affirm the Commission's judgment.

*Affirmed.*

---

[2] Given our holdings above, Velocity's assignments of cross-error are moot and need not be addressed. *See Hollowell v. Virginia Marine Resources Comm'n*, 56 Va. App. 70, 77 (2010) ("It is this Court's duty 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" (quoting *Harrison v. Ocean View Fishing Pier, LLC*, 50 Va. App. 556, 570 (2007))).